This is a death penalty case. William Ernest Kuenzel, a/k/a Billy Kuenzel, was convicted of capital murder during a robbery in the first degree, § 13A-5-40(a)(2), Ala. Code 1975. The victim, Linda Jean Offord, was the cashier at Joe Bob's Crystal and Convenience Store (a gasoline station-store) located in Sylacauga, Talladega County, at the "Forks," the intersection of Highway 511 and Highway 231. She died as a result of a shotgun blast to her chest on the night of November 9, 1987. The investigation by the Sylacauga police of this shooting resulted in the arrest of Billy Kuenzel and Harvey Venn.
A Talladega County jury found Kuenzel guilty of Offord's murder. Judge William Sullivan accepted the recommendation of the jury on November 7, 1988, and sentenced the defendant to death by electrocution. The defendant raised 27 issues on appeal from his conviction to the Court of Criminal Appeals. The Court of Criminal Appeals affirmed his conviction. This Court granted the petition for writ of certiorari because this is a death penalty case. See Rule 39(c), A.R.App.P.
The defendant raises the same 27 issues before this Court as he raised before the Court of Criminal Appeals. The opinion of the Court of Criminal Appeals gives a thorough treatment of each issue raised by the defendant.
We have carefully studied each of the 27 issues in this case. Having read and considered the record, together with the briefs and arguments of counsel, this Court has concluded that the judgment of the Court of Criminal Appeals (see Kuenzel v.State, 577 So.2d 474 (Ala.Crim.App. 1990)) must be affirmed. A.R.App.P. 39(k). As a supplement to the Court of Criminal Appeals' opinion, we provide a narrative of the testimony given at the trial and at subsequent hearings.
 I. Evidence Presented at the Trial
Billy Kuenzel (age 25) and Harvey Venn (age 19) lived together and worked together at the Madex Corporation plant in Goodwater, Alabama. On November 9, 1987, Venn got off work about 2:30 p.m. and was picked up by Kuenzel. They returned home and showered. After Venn visited his girlfriend and Kuenzel visited his parents, they "cruised" around Sylacauga in Venn's two-door 1984 Buick Regal automobile. According to Venn's testimony, they were drinking beer and smoking "pot." (R. 171.) They stopped by Joe Bob's convenience store around 5:00 p.m. (R. 162.) They got something to eat and bought some diet pills.
They returned to Goodwater and went to the Madex plant, where Kuenzel sold some of the pills he had bought to Johnny Lambert. *Page 532 
Johnny Lambert testified that this transaction took place at the plant between 5:00 and 6:00 p.m. Venn and Kuenzel returned to Sylacauga about 8:00 p.m. and stopped about 8:30 p.m. at Joe Bob's store at the "Forks" to use the bathroom and to buy cigarettes. They then left and cruised around Sylacauga. Venn testified that he and Kuenzel were sitting down by the Plaza and that "Billy said he knew where he could pick up some easy money." Venn asked him "where at?" and he said "at the Crystal station." Venn asked Kuenzel how he was going to "do it," and Kuenzel said he "would just go in there with the gun and scare the lady out of the money." (R. 135.)
During this time, they had in their possession one 16-gauge single barrel shotgun; one .32 caliber automatic pistol; and one 12-gauge single barrel shotgun. Kuenzel had one or more 16-gauge shotgun shells loaded with # 1 buckshot in his possession.
The pair again checked the convenience store between 10 p.m. and 10:30 p.m., and Venn saw two people he knew, Phillip Roberts and Wayne Culligan. (R. 137.) April Harris testified that she saw Venn's car, a Buick Regal, at the store between 9:30 and 10:00 p.m. and that she saw Venn and Kuenzel in the store in front of the counter at the door. (R. 494.) She said she knew them because she had met them several months before when Harvey Venn showed her his new car. (R. 496.) She said she had seen them as recently as two weeks before the murder at a "washeteria." (R. 504.)
Dale Templin testified that he went to Sylacauga on November 9, 1987, to play in a basketball game. He said that he left the game with Wayne Culligan and some others and went to Joe Bob's convenience store around 10:00 p.m. He said he observed two males sitting in a car in front of the store, and that the driver was a white male and the other person had dark hair and what appeared to be a mustache. (R. 470.) Wayne Culligan testified that at the store they parked beside an automobile that he identified as a 1983 or 1984 "Cutlass." He could not identify the driver or the passenger. (R. 479.)
James Clement testified that he stopped at the convenience store after refereeing a basketball game. He identified the car pictured in exhibit 46 (a photograph of Venn's automobile) as the one that he saw in the parking lot of the store the night of the murder. He said he saw two people in the car. He identified Venn as the driver of that car. (R. 459.)
Phillip Roberts testified that he was at the store on November 9, 1987, sometime after 10:30 p.m., with Tammy Allen and Jackie Castleberry. He said he talked to Venn for three or four minutes. He saw a man with a mustache sitting in Venn's car, but could not identify him, because the window was fogged. (R. 484.) Roberts identified the car as being either a Regal or a Cutlass.
Venn and Kuenzel left the store and cruised around some more and then returned to the store around 11:00 p.m. When "everything cleared out," Venn said, Kuenzel got out of the car and covered the license plate on Venn's car with a paper sack. (R. 140.)
Kuenzel got back into the car and told Venn to pull up beside the front door, and Venn did so. Kuenzel grabbed the 16-gauge shotgun and put on an orange ski mask and entered the store. There was no one else in the store. Venn said he could not see the cashier, but that he saw Kuenzel put the shotgun down beside his leg.
According to Venn, the cashier/victim, Linda Offord, was in the store alone, sitting on a stool behind the cash register. According to the testimony of Polly Davis, the cashier whom Ms. Offord had relieved at 3:00 p.m., Ms. Offord began her shift with $150 in the cash drawer.
Venn said that after Kuenzel went into the store, he heard a shotgun blast and saw the victim fall backward. The victim was at about point-blank range from the muzzle of the shotgun, and fell to the floor when the buckshot hit her. Venn testified that Kuenzel later told him that when he went into the store he put the gun on the counter and told Ms. Offord to give him the *Page 533 
money. According to Venn, Kuenzel said that she said, "Do you mean the money in the register?" and that Kuenzel replied, "Yeah," and that Ms. Offord said, "Well, you can't have it. Go ahead and pull the trigger." Venn further testified that Kuenzel said that he shot her. He said that Kuenzel ran out of the store, got in the car with Venn, and told him to "haul ass" and that he had not meant to shoot Ms. Offord.
The last sale shown on the cash register at the convenience store was 11:05 p.m. The victim was discovered by Loretta Lynn Graves, the third-shift employee, who arrived about 11:20 p.m. The victim was still alive and gasping at that time, but died on the way to the emergency room.
Dr. Embry testified that he removed two pellets from the victim's back and also removed from her face, chest, and clothing a certain white polyethlyne wadding and packing material found in shotgun shells. He said her death was caused by a shotgun wound to her chest. He said that she also had a broken left leg.
Venn testified that he and Kuenzel drove home down Highway 511 toward Goodwater and Hollins. He said that during the trip home, Kuenzel said that he had not meant to shoot the victim. Venn said that Kuenzel then pulled the pistol out from under the seat and said, "What happens to one can happen to another." (R. 144.)
Diane Mason testified that she left work at about 11:04 p.m. and was driving home on Highway 511 toward Goodwater when she got behind a light-colored, late model Regal or Cutlass that had part of the tag covered. The first number of the tag was a "6." She said that the taillights of that car were similar to the taillights pictured in exhibit 78, another photograph of Venn's car. (R. 521.) She said that the road to her house is about a tenth of a mile before the road to Hollins, where Venn and Kuenzel lived.
Venn said that when he and Kuenzel reached home, they removed the shotguns, shells, pistol, and mask from the car. He said that Kuenzel unloaded the shotgun and put the shells in a sack and threw it into a 55-gallon drum they used to burn trash. Venn said that Kuenzel later burned it. Venn said that Kuenzel stated that it was a shame that the victim got killed over some money that was not even hers to begin with. (R. 145.) He said they played some records and then went to bed around 2:30 or 3:00 a.m.
Venn was contacted by the Sylacauga police on Wednesday. He said he told Kuenzel about the contact and that Kuenzel told him to tell the police that they had been at a friend's house in Fayetteville and that Kuenzel had gone to the convenience store at 9:00 p.m. and stopped to use the bathroom. Venn returned from the police station and told Kuenzel what was said, and Kuenzel wrote it down on a pad. (R. 151.) They then took the 16-gauge shotgun back to Kuenzel's parents' home.
On November 14, 1987, at 4:55 p.m. Dennis Surrett, of the district attorney's office, went to the house in which Venn and Kuenzel were living. Kuenzel signed a form giving Surrett permission to search the house. (R. 293.)
Officer Murchison testified that he obtained a search warrant for Kuenzel's residence. He executed the warrant during daylight hours on November 16, 1987. Detective Brasher, who was also present at the search, testified that in front of the residence there was a 55-gallon drum and that the drum was searched and a 16-gauge shotgun shell was found in it. Surrett testified that he obtained a 16-gauge shotgun from Glenn W. Kuenzel, Billy's father.
Lawden Yates, a firearms expert, testified that the pellets taken from Ms. Offord's back were # 1 buckshot. The wadding and packing material found in her body and clothing were from a 16-gauge shotgun shell. Yates did testing with a comparison microscope. He testified that in his opinion the shell found at Kuenzel's house was fired from the 16-gauge shotgun obtained from Kuenzel's father.
Glenn Kuenzel testified that on the day of the murder he worked his entire shift and returned home at 2:00 p.m., and that *Page 534 
Harvey and Billy came by about 3:00 p.m. Glenn Kuenzel said he told Billy and Harvey that he would come to their residence later that evening to put the tank on a commode. (R. 564.) After Billy and Harvey left, Glenn Kuenzel said, he took his son Kenneth to the emergency room of the hospital. The State presented a rebuttal witness from the hospital, who testified that Kenneth Kuenzel was admitted to the hospital at 1:08 p.m. and was released at 1:55 p.m. on November 9, 1987. (R. 605.)
Glenn Kuenzel testified that at about 10:15 p.m. he left his house to go over to Billy's house to fix the commode. He said that when he got to Billy's house the door was locked and there was a light on in the kitchen area. He said he went around the side of the house and saw Billy asleep on the couch. (R. 568.) Glenn Kuenzel said he went home without waking up his son.
Glenn Kuenzel identified the 16-gauge shotgun as being his gun. He testified that he saw the gun sitting next to the deep freeze at about 2:30 p.m. on November 9, 1987, when he came home from work. (R. 572.) Hope Chamberlain, a friend of the Kuenzels', testified that on Sunday, November 8, 1987, she was at the Kuenzel home when Billy returned the 16-gauge shotgun to his father.
During the trial, Billy Kuenzel chose, upon advice of counsel, not to testify.
 II. Evidence Presented at the Sentencing Hearing
In the sentencing hearing, Kuenzel put into evidence the testimony of his mother and his ex-wife, both of whom asked that his life be spared. His mother testified that Billy's father was frequently "out of the picture" and that Billy had dropped out of school. She also testified that the police constantly harassed her son.
The district attorney impeached the testimony of the mother by questioning her about whether she had promised to pay Orrie Goggins to say that he, and not Billy, was with Harvey Venn on the night of the murder. Orrie Goggins, at the time of his testimony, was serving a 15-year sentence in the penitentiary. Goggins testified that Billy Kuenzel and his mother offered to get him some money if he would tell that he was with Harvey Venn on the night of the murder. (R. 779.)
A licensed counseler, Don Weathington, testified on Kuenzel's behalf that Kuenzel had a history of drug abuse and that Kuenzel had told him that he considered himself addicted to alcohol and valium. He testified that Kuenzel was depressed and anxious.
Kuenzel took the stand in his own behalf during the sentencing hearing. He testified that he had a prior felony record of theft and burglary. He stated that he considered himself an alcoholic and that he used valium and marijuana. (R. 755.) He stated that he drank on average half a case of beer per night. On cross-examination, Kuenzel testified that he never offered Orrie Goggins any money; however, he said he had told Goggins that if Goggins needed help, he would see what he could do for him. (R. 756.) He said he did send Goggins part of his income tax refund.
The State placed Larry Parsons and Steven Dean Cotney on the stand during the sentencing hearing. Both worked with Kuenzel at the Madex plant and both testified that on the morning after the murder Kuenzel had commented on the "girl in Sylacauga getting killed." Cotney testified that Kuenzel had told him, "Me and Harvey, we could kill somebody and get by with it." (R. 779.)
 III. Evidence Presented at the Hearing on Kuenzel's Motion for a New Trial
After the jury returned its verdict, Kuenzel filed a motion for a new trial. A hearing was held on that motion. At the hearing, Kuenzel took the stand and stated that he had gone to Sylacauga on the night of the murder to buy the diet pills to sell at the Madex plant, but that he was back at his house at 7:30 p.m. He testified that one Lisa Sims was with him that night at his house.
Darlene Peoples, a 15-year-old cousin of Mrs. Sims, testified that Lisa Sims told her that she was with Kuenzel on the night of the murder. Lisa Sims testified that she did not know anyone by the name of William *Page 535 
Ernest Kuenzel, and that she had never in her life seen the defendant before this hearing. Lisa Sims testified that she had not talked to her cousin Darlene in a year or so. Subsequently, Darlene Peoples recanted her testimony.
The judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.