On Return to Remand
In Coral v. State, 628 So.2d 954 (Ala.Cr.App. 1992), we found it necessary to remand this cause to the trial court with the instruction that the trial court comply with the requirements of § 13A-5-47(d), Code of Alabama 1975, by entering specific written findings as to the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49, of each mitigating circumstance enumerated in § 13A-5-51, and of any mitigating circumstance offered pursuant to § 13A-5-52, and summarizing the facts surrounding the crime and the appellant's participation in it.[1] We further instructed the trial court to vacate the appellant's conviction for murder under Count I of the indictment.
On July 1, 1992, the trial court complied with our remand by filing a return vacating the appellant's conviction for murder and making specific written findings concerning the existence or nonexistence of aggravating and mitigating circumstances, and written findings of fact summarizing the crime and the appellant's participation in it, as required by § 13A-5-47(d). This return, which includes the sentencing order and findings, is attached hereto as an Appendix and is made a part hereof. The new sentencing order also discloses that the trial court considered the evidence presented during the guilt and sentence phases of the trial; weighed the aggravating and mitigating circumstances, as required by § 13A-5-47(e); considered the advisory verdict of the jury recommending a sentence of life imprisonment without the possibility of parole; considered the presentence report without the victim impact statement; and finding that the aggravating circumstance outweighed the mitigating circumstances, sentenced the appellant to death.
When we remanded the case to the trial court on March 27, 1992, we addressed all issues raised by the appellant in his brief except those contesting his death sentence. Having a proper sentencing order before us, we will now address those remaining issues, as well as review the death sentence in accordance with the requirements of § 13A-5-53, and review the entire record for plain error as required by A.R.App.P. 45A.
 I.
The appellant raises several issues in part III of his original brief, in part XIII of his reply and supplemental brief, and in his brief filed in response to the sentencing order of July 1, 1992, that arise out of the trial court's sentence of death despite the jury's recommendation of a sentence of life imprisonment without the possibility of parole.
 A.
The appellant contends that the override provision of the Alabama death penalty statute, § 13A-5-47(e), is unconstitutional. He argues that the override provision, which he claims denied him the benefit of the jury's sentencing decision, violates his Fifth, Sixth, and Eighth Amendment rights under the United States Constitution. There is no merit to this contention. The United States Supreme Court, as well as the courts of this state, have consistently upheld the validity of advisory jury verdicts, which are subject to judicial override. Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441,108 L.Ed.2d 725 (1990); Hildwin v. Florida, 490 U.S. 638,109 S.Ct. 2055, 104 L.Ed.2d 728 (1989); Baldwin v. Alabama,472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985); See, e.g.,Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154,82 L.Ed.2d 340 (1986); Ex parte Jones, 456 So.2d 380 (Ala. 1984), cert. denied, 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985);Freeman v. State, 555 So.2d 196 (Ala.Cr.App. 1988), aff'd,555 So.2d 215 (Ala. 1989), cert. denied, 496 U.S. 912,110 S.Ct. 2604, 110 L.Ed.2d 284 (1990); Tarver v. State, 500 So.2d 1232
(Ala.Cr.App.), aff'd, 500 So.2d 1256 (Ala. 1986), cert. denied,482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987). In this state, the recommendation of the jury is advisory only and is not binding upon the *Page 991 
trial court. Ex parte Jones. Here, the trial court and not the jury is the sentencing authority. Freeman v. State.
 B.
The appellant further contends that the Alabama override provision is without standards and therefore permits the arbitrary and random imposition of the death penalty, in violation of his constitutional rights. We do not agree. Section 13A-5-47(e), provides:
 "In deciding upon the sentence, the trial court shall determine whether the aggravating circumstances it finds to exist outweigh the mitigating circumstances it finds to exist, and in doing so the trial court shall consider the recommendation of the jury contained in its advisory verdict, unless such a verdict has been waived pursuant to section 13A-5-46(a) or 13A-5-46(g). While the jury's recommendation concerning sentence shall be given consideration, it is not binding upon the court."
Section 13A-5-47(e) prescribes a standard of review for jury override that meets constitutional requirements. Ex parteJones. That standard, as stated in Ex parte Jones, 456 So.2d at 382, is: "The whole catalog of aggravating circumstances must outweigh mitigating circumstances before a trial court may opt to impose the death penalty by overriding the jury's recommendation."
 C.
The appellant further contends that Alabama courts should adopt the Florida standard for jury override prescribed inTedder v. State, 322 So.2d 908 (Fla. 1975). Tedder provides that, in order for the trial court to reject the jury's recommendation of a sentence of life imprisonment without the possibility of parole, "the facts suggesting a sentence of death [must be] so clear and convincing that virtually no reasonable person could differ," id. at 910. The appellant relies on Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290,53 L.Ed.2d 344 (1977), and Proffitt v. Florida, 428 U.S. 242,96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), to support his contention. He argues erroneously that the United States Supreme Court has adopted the Tedder standard and made it a constitutional requirement.
Justice Beatty, speaking for a majority of the Alabama Supreme Court, addressed this issue in Ex parte Jones, 456 So.2d at 382-83, as follows:
 "Petitioner argues that this language in Dobbert demonstrates that the United States Supreme Court found the Tedder rule to be a constitutional requirement when a trial court's override of a jury's advisory verdict of life imprisonment is reviewed.
 "It appears to this Court, however, that the United States Supreme Court, in Proffitt and Dobbert, did not find the Tedder rule to be a general constitutional requirement under a statutory scheme similar to that of Florida. Instead, the United States Supreme Court merely approved the standard which the Florida courts have adopted providing for additional protection to the defendant. Indeed, to hold otherwise would undermine the benefits of judicial sentencing praised by the United States Supreme Court in Proffitt, supra, and adopted therefrom by the Alabama legislature. Therefore, we are not required by the United States Constitution to adopt the Tedder rule.
 "Alabama's statute likewise affords more significant safeguards and more protection for the defendant than formerly. Death is no more automatic under Alabama's statute than under Florida's statute. The whole catalog of aggravating circumstances must outweigh mitigating circumstances before a trial court may opt to impose the death penalty by overriding the jury's recommendation. Because Alabama's statute is a clear expression of public policy as discerned by the legislature, and conforming to the statutory purpose of Florida's statute as approved by the United States Supreme Court, the petitioner's argument for the adoption of additional standards of review of a trial court's sentence was one properly addressed to the legislature."
Accordingly, we find no merit in this contention. *Page 992 
 D.
The appellant further contends that the trial court erred in considering a presentence investigation report that contained hearsay and victim impact information when determining the sentence to be imposed.
"Courts are permitted to consider hearsay testimony at sentencing. . . . While hearsay evidence may be considered in sentencing, due process requires both that the defendant be given an opportunity to refute it and that it bear minimal indicia of reliability. . . ." Kuenzel v. State, 577 So.2d 474,528 (Ala.Cr.App. 1990), aff'd, 577 So.2d 531 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991) (quoting United States v. Giltner, 889 F.2d 1004, 1007 (11th Cir. 1989)). See also Smiley v. State, 435 So.2d 202
(Ala.Cr.App. 1983).
Section 13A-5-45 provides, in pertinent part, the following:
 "(c) At the sentence hearing evidence may be presented as to any matter that the court deems relevant to sentence and shall include any matters relating to the aggravating and mitigating circumstances referred to in sections 13A-5-49, 13A-5-51 and 13A-5-52. . . .
 "(d) Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements. . . ."
These statutory provisions clearly provide for the admissibility of hearsay evidence during the sentencing stage of a capital defendant's trial, so long as the defendant is given a fair opportunity to rebut it. The record in the instant case shows that the appellant was given ample opportunity to rebut the information contained in the presentence report and that he did object to portions of the report during the sentencing hearing. Thus, we find that the trial court could properly have considered the hearsay in the report.
We also find no merit in the contention that the trial court erred in considering victim impact information contained in the presentence report. The appellant relies onBooth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440
(1987), and South Carolina v. Gathers, 490 U.S. 805,109 S.Ct. 2207, 104 L.Ed.2d 876 (1989). The trial court specifically stated in its sentencing order that it did not consider the victim impact statement in imposing the appellant's sentence.
Furthermore, Booth and Gathers have been overruled by Paynev. Tennessee, ___ U.S. ___, 111 S.Ct. 2597, 115 L.Ed.2d 720
(1991), where the Supreme Court recognized the relevance of evidence about the victim and about the impact of the murder on the victim's family to the question before the jury of whether the death penalty should be imposed. Although the Supreme Court held that, if a state chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar, it also ruled that, if victim impact evidence is "so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief."Id. at ___, 111 S.Ct. at 2608 (citing Darden v. Wainwright,477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)). In the instant case, the victim impact statement was not presented to the jury, but only to the trial court, and, as noted, the court did not consider it in arriving at its sentence. We find no constitutional violation here.
The appellant further contends that the inclusion in the presentence report of criminal charges that had not resulted in convictions was reversible error. We find no merit to this contention. Thompson v. State, 503 So.2d 871 (Ala.Cr.App. 1986), aff'd, 503 So.2d 887 (Ala. 1987), cert. denied,484 U.S. 872, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987); Rule 3(b)(2), A.R.Crim.P.Temp. Likewise, the appellant's contention that the trial court erroneously considered convictions for offenses in the presentence report that did not involve violence is also without merit. Thompson v. State.
 E.
The appellant contends that the trial court erred in finding the existence of the *Page 993 
aggravating circumstance that the capital offense was committed while the appellant was engaged in the commission of a burglary, § 13A-5-49(4). We find no error here. Our capital murder statute contemplates that certain aggravating circumstances will be established by certain capital verdicts. See §§ 13A-5-45(e), 13A-5-50. This practice of permitting the use of an element of the underlying crime as an aggravating circumstance is referred to as "double counting" or "overlap," and has been upheld. See Lowenfield v. Phelps, 484 U.S. 231,108 S.Ct. 546, 98 L.Ed.2d 568 (1988); Ritter v. Thigpen,828 F.2d 662 (11th Cir. 1987); Ex parte Ford, 515 So.2d 48
(Ala. 1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1061,98 L.Ed.2d 1023 (1988); Kuenzel v. State, 577 So.2d 474
(Ala.Cr.App. 1990), aff'd, 577 So.2d 531 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991). See also section III-C in our opinion of March 27, 1992.
 II.
It is our responsibility to review the entire record in this case for plain error. A.R.App.P. 45A, provides as follows:
 "In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
In accordance with the above rule, we have examined the record in the case sub judice, including the resentencing proceedings referred to above, for any plain error, whether or not the error was brought to our attention by the parties or to the attention of the trial court. In considering what constitutes plain error in a capital case, we have adhered to the interpretation of the term "plain error," adopted by the Alabama Supreme Court, which follows the interpretation given that term by the federal courts. See Ex parte Harrell,470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269,88 L.Ed.2d 276 (1985); Ex parte Womack, 435 So.2d 766 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367
(1983). See also Hooks v. State, 534 So.2d 329 (Ala.Cr.App. 1987), aff'd, 534 So.2d 371 (Ala. 1988), cert. denied,488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989). Plain error arises only if the error is such that it has or probably has adversely affected a substantial right of the appellant, A.R.A.P. 45A, or is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings. Ex parte Womack. After reviewing the record, we find no plain error or defect in the proceedings, either in the guilt phase or the sentence phase of the trial.
We have also reviewed the appellant's sentence pursuant to § 13A-5-53, which requires that, in addition to reviewing the case for any error involving the conviction, we also review the propriety of the death sentence. This review is to include our determination of the following: (1) whether any error adversely affecting the rights of the appellant was made in the sentence proceedings; (2) whether the trial court's findings concerning the aggravating and mitigating circumstances were supported by the evidence; and (3) whether death is the appropriate sentence in the case. Section 13A-5-53(b) requires that, in determining whether death is the proper sentence, we determine the following: (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether an independent weighing by us of the aggravating and mitigating circumstances indicates that death is the proper sentence; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
As we have previously stated in our opinions of May 31, 1991, and March 27, 1992, the appellant was indicted in a two-count indictment for the capital offenses of murder committed during a robbery in the first degree, in violation of § 13A-5-40(a)(2) (Count I), and of murder committed during a burglary in the first degree, in violation of § 13A-5-40(a)(4) (Count II). The jury found him guilty of the lesser included offense of murder (§ 13A-6-2(a)(1)) under Count I and *Page 994 
guilty of the capital offense of murder committed during a burglary in the first degree, as charged in Count II (§13A-5-40(a)(4)). A separate sentencing hearing was held before the jury in accordance with §§ 13A-5-45 and -46. After hearing the evidence pertaining to aggravating and mitigating circumstances and after being instructed by the trial court as to its responsibilities under the law, the jury, by a majority vote of eight to four,[2] returned an advisory verdict recommending a sentence of life imprisonment without the possibility of parole for the conviction of the capital offense charged in Count II (murder committed during a burglary in the first degree) of the indictment.
Thereafter, the trial court held another hearing in accordance with § 13A-5-47, to aid it in determining whether to sentence the appellant to life imprisonment without the possibility of parole as recommended by the jury or to death. It ordered and considered a written presentence investigation report, as required by § 13A-5-47(b). Thereafter, it entered specific written findings concerning the existence or nonexistence of each aggravating circumstance listed in §13A-5-49, and the existence or nonexistence of each mitigating circumstance listed in § 13A-5-51, and any mitigating circumstance included in or offered pursuant to § 13A-5-52, as well as written findings of fact summarizing the crime and the appellant's participation in it. The trial court found the existence of one aggravating circumstance, i.e., that "the capital offense was committed while Coral was engaged in the commission or the attempted commission of a burglary," §13A-5-49(4).
In accordance with §§ 13A-5-51 and -52, the trial court considered all evidence presented in all phases of the trial as well as information in the presentence investigation report favorable to the appellant in its efforts to determine if there was any aspect of the appellant's character or record or any circumstance of the crime for which he had been convicted that would constitute a mitigating circumstance. The trial court found that none of the enumerated mitigating circumstances listed in § 13A-5-51 was proven to exist. It found the existence of a number of other mitigating circumstances offered by the appellant, which are as follows: the state relied on the proof of only one aggravating circumstance; the appellant has no history of prior felonies involving the use of or threat of violence to a person; the length of time the jury deliberated indicates residual doubt; the appellant could adjust peacefully to penitentiary life; the appellant could make positive contributions to those with whom he comes in contact in the penitentiary; the appellant is an accomplished automobile mechanic and would be willing to teach other inmates that trade; the appellant is a thoughtful, caring person who often makes his own greeting cards, with poetry, to please others; the appellant is a pleasant person who enjoys singing and dancing and would be a positive influence on those with whom he would come into contact in the prison; the appellant is an accomplished handyman and carpenter and would be willing to teach that trade to other inmates; the appellant is well thought of by his family and friends; the appellant is the father of a four-year-old son, and the two care deeply for each other; the appellant is willing to do a favor for a friend without expecting a favor or compensation in return; the appellant has a history of performing work on the promise that he would be paid while knowing there was little likelihood that he would be paid; the appellant is a man of great patience; the appellant has already been a positive influence on fellow inmates, has taught them art, and has helped them with legal counsel; the appellant has adjusted to incarceration; the appellant has been a father figure to a friend, Gina Quello, and has urged her to excel in school and to make something of her life; the appellant's prior acts of kindness and good works toward others tend to indicate the possibility of redemption and rehabilitation in the penitentiary; the appellant shows love and concern for his family and friends and receives love and concern in return; the appellant can adjust to long-term prison life without significant difficulty; the jury recommended a sentence *Page 995 
of life imprisonment without parole; there was no "physical" evidence linking the appellant to the crime; the appellant was not a "problem" inmate during his incarceration; the appellant has sought to "do good" for other inmates; the appellant's childhood was unstable, with little input from his mother, father, and siblings; the appellant experienced limited interaction with members of his family during his youth; the appellant was deprived of family nurturing normally required during development; the appellant was cooperative with law enforcement officers in the instant case; the appellant willingly provided saliva and hair samples during the investigation of the case; the crime for which the appellant has been convicted is "out of character" for the appellant; the appellant spent much of his youth in foster homes and detention homes; the mother of the appellant's child has suffered multiple miscarriages and has had a stillborn child; the appellant waived extradition to Alabama after his arrest; and during plea bargaining, the state offered to reduce the charge to murder if the appellant would plead guilty and receive a sentence of life imprisonment without the possibility of parole.
The trial court's findings show that it carefully weighed the aggravating and mitigating circumstances in accordance with the appropriate statutes; that it considered the evidence presented at the guilt and sentencing phases of the trial, the presentence investigation report, and the recommendation of the jury; and that it found that the one aggravating circumstance "far outweighs" the mitigating circumstances. The trial court discusses at length each mitigating circumstance that it found to exist, and the weight that it accorded each. While finding numerous nonenumerated mitigating circumstances, the court noted that many were cumulative, and it gave its specific reasons for declining to give "great weight" to many of those it found. It repeatedly noted that, while finding the existence of a particular mitigating circumstance, it considered the circumstances to be inconsistent with the facts of the crime and the appellant's prior criminal history. In weighing those mitigating circumstances against the one aggravating circumstance, the trial court was obviously mindful of the process mandated by § 13A-5-48, which states as follows:
 "The process . . . of weighing the aggravating and mitigating circumstances to determine the sentence shall not be defined to mean a mere tallying of aggravating and mitigating circumstances for the purpose of numerical comparison. Instead, it shall be defined to mean a process by which circumstances relevant to sentence are marshalled and considered in an organized fashion for the purpose of determining whether the proper sentence in view of all the relevant circumstances in an individual case is life imprisonment without parole or death."
Concluding that the only appropriate sentence in the case is death, the trial court sentenced the appellant accordingly. In its consideration of the jury's recommended sentence, the trial court gave the following explanation for overriding the recommendation:
 "The Court gave great weight to the jury's recommendation in this case. However, upon an independent review of the circumstances of this case, the Court is of the opinion that the facts clearly indicate beyond any reasonable doubt that the defendant Robert Lance Coral, during a burglary, was discovered by the victim who knew the Defendant and could easily identify him. After severely beating the victim, the Defendant with the intent to avoid prosecution for burglary, murdered the victim who would have been a potential witness against him in a burglary trial."
 "The Court is of the opinion that in order to protect the general public and deter others from murdering witnesses to their crimes that the death penalty should be imposed and that the nature of this crime is sufficient to outweigh the opinion of the jury. The facts are clear that the Defendant severely beat the victim, attempted to strangle her and shot her in the head at close range. The facts indicate that the defendant took the time to use a pillow to muffle the deadly gunshot so that the deliberate murder would not be discovered before his flight." *Page 996 
As required, we have searched the record of both the guilt and the sentence phases of the appellant's trial, and we have found no reversible error. We find no error adversely affecting the rights of the appellant in the sentencing proceedings. We find that the trial court's findings concerning the aggravating and mitigating circumstances are supported by the evidence. In reviewing the propriety of the sentence, we find no evidence that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. We concur in the trial court's reasons for overriding the jury's advisory verdict. Our independent weighing of the aggravating and mitigating circumstances convinces us that death is the appropriate sentence in this case.
The appellant was convicted of the offense of murder committed during a burglary in the first degree (§13A-5-40(a)(4)), a capital offense by statutory definition. We note that similar crimes are being punished capitally throughout this state. See, e.g., Thomas v. State,539 So.2d 375 (Ala.Cr.App.), aff'd, 539 So.2d 399 (Ala. 1988), cert. denied, 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 709 (1989);Lynn v. State, 543 So.2d 704 (Ala.Cr.App. 1987), aff'd,543 So.2d 709 (Ala. 1988), cert. denied, 493 U.S. 945,110 S.Ct. 351, 107 L.Ed.2d 338 (1989); Ford v. State, 515 So.2d 34
(Ala.Cr.App. 1986), aff'd, 515 So.2d 48 (Ala. 1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023 (1988);Clisby v. State, 456 So.2d 86 (Ala.Cr.App. 1982), aff'd in part and remanded in part, 456 So.2d 95 (Ala.), remanded,456 So.2d 98 (Ala.Cr.App.), remanded again, 456 So.2d 99 (Ala.Cr.App.), aff'd after remand, 456 So.2d 102 (Ala.Cr.App. 1983), aff'd,456 So.2d 105 (Ala. 1984), cert. denied, 470 U.S. 1009,105 S.Ct. 1372, 84 L.Ed.2d 391 (1985). Considering the crime committed and the appellant, we find that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases.
The appellant's conviction and sentence of death are due to be, and they are hereby, affirmed.
AFFIRMED.
All Judges concur.
 APPENDIX In the Circuit Court for the Fifteenth Judicial Circuit Montgomery County, Alabama State of Alabama, Plaintiff, v. Robert Lance Coral, Defendant. Criminal Case No. CC-88-741-TH SENTENCING ORDER
The findings contained in this Order are based upon the evidence presented at trial, the evidence presented at the Sentencing Hearing before the Jury, the pre-sentence Report, with the exception of the Victim Impact Statement which this Court has read but will not consider, and the evidence presented at the sentencing hearing before this Court. The Court has considered all the contentions made by the parties. The Court has also considered the jury's advisory verdict but has not felt bound by it.
 GENERAL FINDINGS CONCERNING THE DEFENDANT AND THE CRIME
On March 7, 1988 Robert Lance Coral was indicted on a two count indictment for the Capital Murder of Nancy Burt. The aggravating circumstance alleged in Count I of the indictment was the murder of Nancy Burt committed during a robbery, and the aggravating circumstance alleged in Count II of the indictment was the murder of Nancy Burt committed during a burglary. Code of Alabama, 1975, Section 13A-5-40(4).
Commencing on September 18, 1989, the case was tried before a jury of Robert Lance Coral's peers. On September 23, 1989, the jury returned a verdict of guilty of the offense of Capital Murder as charged in Count II of the indictment and a verdict of guilty of the lesser included offense of Murder under Count I of the indictment. In a separate sentencing recommendation phase of the trial the jury returned a recommendation of life without the possibility of parole with a vote of eight jurors in favor of life without parole *Page 997 
and four jurors in favor of a punishment of death.
A sentencing hearing was held before the Court on October 20, 1989. The Court had ordered a pre-sentence investigation and considered the Pre-sentence Report. That report is made a part of the record in this case. Counsel for the parties were given ample opportunity to examine the report for any inaccuracies, and at the Sentencing Hearing council for the parties brought to the attention of the court all of their contentions concerning the Pre-sentence Report. No part of the pre-Sentence Report has been or shall be kept confidential.
The State and the Defendant were given the opportunity to present further evidence to the Court in regard to aggravating and mitigating circumstances. The State presented argument. Coral through his counsel presented further argument concerning mitigating circumstances which were considered by the Court, and urged the Court to fix Coral's punishment at Life Imprisonment Without the Possibility of Parole.
The Court has considered the pre-sentence Report regarding the background of Coral and the other information in the report which is prescribed by law or Court rule for felony cases generally. The Court has further made it's own independent analysis of the existence or nonexistence of aggravating and mitigating circumstances, and has made it's own application of these facts and considered them with regard to the enumerated aggravating and mitigating circumstances whether enumerated or not.
 THE VICTIM
Nancy Burt ("the victim") was a thirty-four year old divorcee who lived at Red Lion Apartments at the time of this incident. The victim had a boyfriend, Tracy Headly, as a roommate. Mr. Headly was, at the time, a member of the Montgomery Fire Department.
Abby Sommers is the estranged girlfriend of the Defendant Robert Lance Coral and is the mother of his child. Sommers lived above Nancy Burt's apartment at the Red Lion Apartments. Robert Coral would stay with Ms. Sommers while visiting his son. From the evidence, it appears that Nancy Burt was killed by Robert Lance Coral in the evening of September 18, 1987.
 SUMMARY OF CRIME AND THE DEFENDANT'S PARTICIPATION
The evidence presented by the State showed that the body of the victim was discovered by Tracy Headly in the victim's apartment in the early morning hours of September 19, 1987. Headly discovered that the deadbolt lock on the front door of the apartment was locked and that his key would not unlock the door. Mr. Headly testified that he then went to the sliding glass door by the patio, which he found unlocked, and entered the apartment. Scratch marks were found on the patio door around the latch.
Headly testified that he found the victim's body in the hallway of the apartment on the floor fully clothed and partially covered with bed linens. While no scientific evidence of a sexual assault was presented, the victim's undergarments had been pulled down to her knees which exposed her genitalia. Headly, who has had training with the Montgomery Fire Department, felt for a pulse on Ms. Burt and found none. Headly then ran upstairs to Sommers apartment and asked her to call 911.
The state's evidence disclosed that the victim's nose was broken, that she had been severely beaten around the face and that she had a contact gunshot wound to the head which was the immediate cause of her death. The nature of her face wounds indicated that she had been beaten with the butt of a pistol. Further, there were bruises and fingernail marks on the victim's neck which were consistent with the killer attempting to strangle the victim.
Blood was found in the victim's bedroom, around the dining table and in the hallway, where the body was found. There was evidence found which would indicate that a pillow had been placed over the victim's head to muffle the gunshot when it was fired. Further, evidence indicated that there had been a struggle which began in the bedroom and *Page 998 
continued until the victim was killed in the hallway.
The case against Robert Lance Coral was based on circumstantial evidence which proved beyond any reasonable doubt that he committed the Capital Murder of Nancy Burt.
The state presented evidence through the testimony of a firearms expert that the victim had been shot by a bullet from a .32 caliber "break-down in the middle-type" revolver. Further, victim's purse was found in the kitchen, her checkbook, some deposit slips and some coins were found on the kitchen floor, and her wallet, with any money and credit cards she had at the time was missing. The evidence tended to show that the victim had been paid by her employer on the day of her death, but no currency was found in her purse or elsewhere in the apartment.
On September 18, 1987, the morning of the murder, Robert Lance Coral was released from the Montgomery City Jail where he had been held on harassment charges arising from a dispute with Ms. Sommers over the custody of their child, Bobby. When Coral was released Sommers helped Coral retrieve his automobile, a black 1977 "TransAm", from the city's impound lot and gave Coral money for gas to help him go back to Illinois.
While incarcerated, the appellant told other inmates that he owned a .32 caliber pistol, which he kept in his automobile. He also told one inmate that he planned to rob a store when he was released from jail and indicated that he would be willing to kill the robbery victim if he "had to". A holster for a .32 caliber pistol was found in Coral's automobile and a friend of Coral's testified that Coral had pawned him a .32 caliber pistol.
On the early evening on September 18, 1987, the victim ate supper with her boyfriend, Tracy Headly, at his brother's home. Burt left the Headly residence alone between 8:15 p.m. and 8:30 p.m. and returned to the Red Lion apartments. Robert Lance Coral was observed in front of Nancy Burt's apartment by a six year old boy who was familiar with Coral and who lived at the Red Lion Apartments. Another witness, Francis Browne, observed Coral in a grocery store parking lot near the victim's apartment around 9:10 or 9:20 p.m. The murder-burglary occurred at approximately that time. Browne was familiar with Robert Lance Coral and knew him well as she was a friend of Coral's girlfriend, Abby Sommers.
Mr. Coral then traveled to Galatia, Illinois where he told his friend William Braden that he "did it." Braden asked Coral "Why?" he did it and Braden testified that Coral responded "he was robbing her, she came home before he expected her to, she had too much on him and he [Coral] said I had to shoot the bitch." Mr. Braden then contacted the authorities and relayed to them what Mr. Coral has told him.
 AGGRAVATING CIRCUMSTANCES
The State offered proof of one enumerated aggravating circumstance:
That the capital offense was committed while Coral was engaged in the commission or the attempted commission of a burglary. Alabama Code, 1975, Section 13A-5-49-(4).
The Court finds beyond a reasonable doubt that this aggravating circumstance was proved. When the jury returned a verdict finding Coral guilty of the capital offense he was also found guilty of the aggravating circumstance. However, the Court has only considered this as one piece of evidence proving the aggravating circumstance. The Court also finds that the State has proved this aggravating circumstance beyond a reasonable doubt, through their evidence presented during the sentencing hearing.
The facts clearly point out that while the burglary was in process the Defendant was discovered by the victim. Coral beat the victim, attempted to strangle her and then at close range shot and killed her so that she would not be able to testify against him. The facts clearly indicate that the victim knew who the Defendant was and, but for her death, could have testified against him in any burglary trial which later followed. The Court finds that the Defendant with specific intent killed Nancy Burt while in the commission of a burglary in order to prevent her *Page 999 
testimony against him concerning the burglary.
The state requested a charge on the aggravating circumstance outlined in Alabama Code, 1975, Section13A-5-49(8). The Court denied that request and finds that the state did not present sufficient evidence to prove the existence of the aggravating circumstance outlined in Section13A-5-49(8).
The Court finds no other aggravating circumstance.
 ENUMERATED MITIGATING CIRCUMSTANCES
Coral asserts a number of mitigating circumstances. The Court will first address the existence or nonexistence of the mitigating circumstances enumerated in Alabama Code, 1975, Section 13A-5-51.:
(1) "The Defendant has no significant history of prior criminal activity."
Discussion: The Court finds that there was no evidence submitted sufficient to prove the above mitigating circumstance. Further, it appears from the record that the Defendant has the following prior criminal record outlined in the pre-sentence Report. The pre-sentence report was made a part of the record, and the Defendant had an opportunity to challenge the report but did not challenge the existence of the following prior criminal acts:
 1-9-66 Chicago, IL, PD TOP 1Y Prison, Suspended 3-13-70 Chicago, IL, PD TOP 1Y, 30D, Suspended 12-21-74 Chicago, IL, PD TOP 1 to 3Y on 4-9-75. Paroled: 10-14-75 10-9-76 Chicago, IL, PD TOP 1 to 3Y in prison. 8-4-78 Chicago, IL, PD TOP 3Y in prison. 3-13-79 Chicago, IL, PD TOP; TOP 3Y in prison.
Further, the Defendant submitted a mitigating circumstance contending that "Defendant has no history of prior felonies involving the use of or threat of violence [emphasis supplied]," which contention is consistent with Defendant having the above criminal record involving property crimes.
(2) "The capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance."
Discussion: The Court finds insufficient evidence that the Defendant was "under the influence of extreme mental or emotional disturbance." Further, it is reasonable to conclude that the murder was committed in order to avoid conviction for burglary by murdering a key witness to the burglary.
(3) "The victim was a participant in the defendant's conduct or consented to it."
Discussion: The Court finds that there is no evidence to suggest that the victim participated in the Defendant's conduct or consented to it. In addition, the Defendant did not submit this as a mitigating circumstance.
(4) "The defendant was an accomplice in the capital offense committed by another person and his participation was relatively minor."
Discussion: There is no evidence that Defendant was an accomplice or had an accomplice in the commission of this murder. The Court finds that the Defendant acted alone and was not a minor participant. In addition, the Defendant did not submit this as a mitigating circumstance.
(5) "The defendant acted under extreme duress or under the substantial domination of another person."
Discussion: The is no evidence to suggest that the defendant acted under extreme duress or under the substantial domination of another person. *Page 1000 
(6) "The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired."
Discussion: There is not sufficient evidence to suggest that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
(7) "The age of the Defendant at the time of the crime."
Discussion: The Court finds that the defendant was 41 years of age at the time of the crime.
 NON-ENUMERATED MITIGATING CIRCUMSTANCES
Coral and counsel for defendant presented evidence, and suggested the following non-enumerated circumstances presented under Alabama Code, 1975, Section 13A-5-52.
1. The State is relying on only one aggravating circumstance, that the capital offense was committed during the course of a burglary.
Discussion: The Court finds this to be a fact in mitigation, but would point out that the use of only one aggravating circumstance is permissible in imposing sentence for a capital offense.
2. That the Defendant has no history of prior felonies involving the use of or threat of violence to a person.
Discussion: The Court did not consider any felonies involving the use of or threat of violence to a person and finds this to be a mitigating circumstance.
3. That the Defendant "has always and still contends that he is not guilty of the offense".
Discussion: The Court does not find this to be a fact as the Court finds the Defendant did admit to witness Braden that he was guilty of the offense.
4. That the time the jury deliberated on the conviction and sentencing phases indicates "residual doubt" within the minds of the jury as to Defendant's guilt.
Discussion: The Court finds this to be a mitigating circumstance but does not place great weight on it as a mitigating circumstance. After numerous years on the bench, the Court declines to speculate on what the time the jury spends to deliberate would indicate.
5. That Defendant could adjust peacefully to penitentiary life.
Discussion: The Court did consider some evidence that was presented that would indicate the Defendant could adjust peacefully to penitentiary life. The Court finds this to be a mitigating circumstance.
6. That Defendant could make positive contributions to those whom he comes in contact with in the penitentiary.
Discussion: The Court did consider some evidence that was presented that would indicate the Defendant could make positive contributions while incarcerated. The Court finds this to be a mitigating circumstance.
7. That Defendant is an accomplished automobile mechanic and would be willing to teach inmates this trade.
Discussion: The Court did consider some evidence that was presented that would indicate the Defendant could make positive contributions while incarcerated. The Court finds this to be a mitigating circumstance. However, the Court feels this is somewhat cumulative with mitigating circumstance number 6.
8. That Defendant is a thoughtful, caring person who would often make his own greeting cards, with appropriate poetry, in an effort to please others.
Discussion: The Court did consider some evidence presented in this regard and finds this to be a mitigating circumstance. However, the Court feels this mitigating circumstance should not be given great weight as the listed attributes are inconsistent with the violent nature of this capital offense.
9. That Defendant is a pleasant individual who enjoys singing and dancing and would be a positive influence with those whom he *Page 1001 
would come in contact with in the penitentiary.
Discussion: The Court did consider some evidence that was presented that would indicate the Defendant could make positive contributions while incarcerated. The Court finds this to be a mitigating circumstance. However, the Court feels this is somewhat cumulative with mitigating circumstance number 6.
10. That Defendant is an accomplished handyman/carpenter and would be willing to teach inmates this trade.
Discussion: The Court did consider some evidence that was presented that would indicate the Defendant could make positive contributions while incarcerated. The Court finds this to be a mitigating circumstance. However, the Court feels this is cumulative with mitigating circumstance number 6.
11. That Defendant is well thought of by family and friends.
Discussion: The Court finds this to be a mitigating circumstance.
12. That Defendant is a father, has a relationship with his four year old son Bobby and the two care deeply for one another.
Discussion: The Court finds this to be a mitigating circumstance and considered evidence that the Defendant's son cares deeply for his father.
13. That Defendant is willing to do a favor for a friend without expecting a favor or compensation in return.
Discussion: The Court did consider some evidence presented in this regard and finds this to be a mitigating circumstance. However, the Court feels this mitigating circumstance should not be given great weight as the listed attributes are inconsistent with the violent nature of this capital offense.
14. That Defendant has a history of performing work on the promise that he would be paid while knowing that there was a reasonable likelihood that he would not be paid.
Discussion: The Court finds this to be a mitigating circumstance.
15. That Defendant is a man of great patience.
Discussion: The Court did consider some evidence presented in this regard and finds this to be a mitigating circumstance. However, the Court feels this mitigating circumstance should not be given great weight as the listed attribute is inconsistent with the violent nature of this capital case.
16. That Defendant has already been a positive influence on those inmates with whom he has come in contact with and has taught inmates art and helped fellow inmates in obtaining legal counsel.
Discussion: The Court did consider some evidence that was presented that would indicate the Defendant could make positive contributions while incarcerated. The Court finds this to be a mitigating circumstance. However, the Court feels this is somewhat cumulative with mitigating circumstance number 6.
17. That the jail nurse testified that Defendant has adjusted to incarceration as well as or better than most other inmates with whom the nurse has come in contact.
Discussion: The Court did consider some evidence that was presented that would indicate the Defendant could make positive contributions while incarcerated. The Court finds this to be a mitigating circumstance. However, the Court feels this is somewhat cumulative with mitigating circumstance number 6.
18. That Defendant was a "fatherly figure" to one Gina Quello and that Defendant "pushed" Ms. Quello to excel in school and to "make something of her life".
Discussion: The Court finds this to be a mitigating circumstance and considered substantial evidence that Gina Quello considers Defendant to be a "father figure" and that she deeply cares for Defendant.
19. That there is evidence to suggest that prior acts of kindness and good works of Defendant towards others tend to indicate the possibility of redemption and rehabilitation of Defendant in the penitentiary.
Discussion: The Court finds this to be a mitigating circumstance, but gives this little *Page 1002 
weight considering the violent nature of the capital crime and the significant criminal record of the Defendant.
20. That Defendant shows love and caring toward family and friends and that Defendant receives love and caring from family and friends.
Discussion: The Court finds this to be a mitigating circumstance.
21. That Defendant's prior incarceration indicate that Defendant can be integrated into long-term prison life without significant difficulty and with a reasonable expectation that Defendant will function well in a penal institution.
Discussion: The Court finds this to be a mitigating circumstance.
22. That there is no prohibition of the Court exercising mercy.
Discussion: The Court realizes there is no such prohibition but considers this a statement and not a mitigating circumstance.
23. That the trial jury returned a suggested sentence of life without the possibility of parole.
Discussion: The Court finds this to be a mitigating circumstance. See the Court's discussion following under the title "Consideration of the Sentence Recommended by the Convicting Jury."
24. That there was no physical evidence linking Defendant to this crime.
Discussion: The Court finds this to be a mitigating circumstance.
25. That Defendant has not been a "problem inmate" during his incarceration.
Discussion: The Court did consider some evidence that was presented that would indicate the Defendant could make positive contributions while incarcerated. The Court finds this to be a mitigating circumstance. However, the Court feels this is somewhat cumulative with mitigating circumstance number 6.
26. That Defendant has sought to do good for other inmates.
Discussion: The Court did consider some evidence that was presented that would indicate the Defendant could make positive contributions while incarcerated. The Court finds this to be a mitigating circumstance. However, the Court feels this is somewhat cumulative with mitigating circumstance number 6.
27. That Defendant's childhood was unstable, with little input from mother, father and siblings.
Discussion: The Court finds this to be a mitigating circumstance. However, the Court finds that there was not sufficient evidence to establish the mitigating circumstances enumerated in Alabama Code, 1975, Section 13A-5-51(2), (5), or (6).
28. That Defendant experienced limited, inconsistent interaction between family members during his youth.
Discussion: The Court finds this to be a mitigating circumstance. However, the Court finds that there was not sufficient evidence to establish the mitigating circumstances enumerated in Alabama Code, 1975, Section 13A-5-51(2), (5), or (6).
29. That Defendant was deprived of the family nurturing that is normally required to properly develop.
Discussion: The Court finds this to be a mitigating circumstance. However, the Court finds that there was not sufficient evidence to establish the mitigating circumstance enumerated in Alabama Code, 1975, Section 13A-5-51(2), (5), or (6).
30. That Defendant was cooperative with law enforcement officers in this case.
Discussion: The Court finds this to be a mitigating circumstance.
31. That Defendant provided saliva sample and a hair sample upon request despite being under no compulsion to do so.
Discussion: The Court finds this to be a mitigating circumstance.
32. That the crime Defendant has been convicted of is out of character for this Defendant.
Discussion: The Court did consider some evidence presented in this regard and finds *Page 1003 
this to be a mitigating circumstance. However, the Court feels this mitigating circumstance should not be given great weight as the listed attributes are inconsistent with the violent nature of this capital offense.
33. The Defendant spent much of his youth either in foster homes or in detention.
Discussion: The Court finds this to be a mitigating circumstance. However, the Court finds that there was not sufficient evidence to establish the mitigating circumstance enumerated in Alabama Code, 1975, Section 13A-5-51(2), (5), or (6).
34. That the mother of Defendant's child has suffered multiple miscarriages and had a stillborn child.
Discussion: The Court finds this to be a mitigating circumstance. However, the Court finds that there was not sufficient evidence to establish the mitigating circumstance enumerated in Alabama Code, 1975, Section 13A-5-51(2), (5), or (6).
35. That Defendant waived extradition after his arrest in Illinois.
Discussion: The Court finds this to be a mitigating circumstance.
36. That, during plea bargaining, the State offered to reduce the charge to murder if the Defendant would plead guilty and the Defendant would receive a sentence of life without the possibility of parole.
Discussion: The Court finds this to be a mitigating circumstance.
37. That the sentence of death would be excessive and/or disproportionate if imposed in this case when comparing this case to other capital murder cases in this circuit and when comparing this case to both the crime in other cases and the Defendants in other cases.
Discussion: The Court does not find this to be a fact and does not find evidence to establish this as a mitigating circumstance. The Court would point out that the victim in this case was severely beaten and shot at close range.
 THE WEIGHING OF AGGRAVATING AND MITIGATING CIRCUMSTANCES
The aggravating and mitigating circumstances are discussed at length in the previous pages. To summarize, the Court finds only one statutory aggravating circumstance and a number of mitigating circumstances. The facts are clear that the Defendant committed the murder during the course of a burglary. The Court feels that public policy is served, depending on the mitigating circumstances found, by the imposition of the sentence of death in situations such as this when the murder is apparently committed in order to avoid prosecution for the underlying felony. The Court believes that this is a primary reason for the adoption by our legislature of the aggravating circumstance located inAlabama Code, 1975, Section 13A-5-40(4).
The Defendant submitted testimony and other evidence which proved a number of mitigating circumstances. A large number of the mitigating circumstances tend to show that Defendant could be a positive influence on the other inmates and could adjust peacefully to life in the penitentiary. The Court believes this to be true and notes a number of skills Defendant possesses and his apparent willingness to share his time and energies with others. The Court also found as a mitigating circumstance that the Defendant has had family and other difficulties in his youth and in his adult life. While the Court feels that these do not rise to the level of one of the enumerated mitigating circumstances, the Court has considered these as circumstances in mitigation.
There was also evidence which indicates the Defendant possesses a number of positive character traits. The Court found these to be mitigating circumstances but did not give them great weight considering the nature of this crime and Defendant's prior criminal history.
In weighing the aggravating circumstance and the mitigating circumstances it is apparent to this Court that the one aggravating circumstance outweighs the mitigating circumstances found. In the present case the Defendant was in the process of committing *Page 1004 
a burglary when he was confronted by the victim. The Defendant confessed to a friend that he committed the murder because the victim "had too much on him."
In weighing the aggravating and mitigating circumstances, the Court is aware of the nature of the process as defined in Section13A-5-48of theAlabama Code.It is not a matter the Court takes lightly. After carefully considering the matter, the Court is convinced that one statutory aggravating circumstance found far outweighs all of the mitigating circumstances and that the sentence out to be death.
 CONSIDERATION OF THE SENTENCE RECOMMENDED BY THE CONVICTING JURY
The Court gave great weight to the jury's recommendation in this case. However, upon an independent review of the circumstances of this case, the Court is of the opinion that the facts clearly indicate beyond any reasonable doubt that the Defendant Robert Lance Coral, during a burglary, was discovered by the victim who knew the Defendant and could easily identify him. After severely beating the victim, the Defendant with intent to avoid prosecution for burglary, murdered the victim who would have been a potential witness against him in a burglary trial.
The Court is of the opinion that in order to protect the general public and deter others from murdering witnesses to their crimes that the death penalty should be imposed and that the nature of this crime is sufficient to outweigh the opinion of the jury. The facts are clear that Defendant severely beat the victim, attempted to strangle her and shot her in the head at a close range. The facts indicate that the Defendant took the time to use a pillow to muffle the deadly gunshot so that the deliberate murder would not be discovered before his flight.
 ADJUDICATION OF GUILT AND PRONOUNCEMENT OF SENTENCE
It is hereby ORDERED, ADJUDGED AND DECREED that the Defendant, Robert Lance Coral is guilty of the Capital Murder of Nancy Burt in violation of Code of Alabama 1975, Section13A-5-40(a)(4), or Murder During the Course of Committing a Burglary as set out in Count II of the indictment against Robert Lance Coral.
The Jury also found this Defendant guilty of the lesser included offense of murder under Count I of the indictment. The Court hereby VACATES any adjudication of guilt under Count I.
It is further ORDERED, ADJUDGED AND DECREED that for the capital offense for which he has been adjudicated guilty, the Defendant, Robert Lance Coral, is hereby sentenced to Death by electrocution. Pursuant to the Alabama Rule of Appellate Procedure 8(d)(1), the date of the execution is hereby to be set by the Alabama Supreme Court at the appropriate time.
It is further ORDERED, ADJUDGED AND DECREED that the Defendant, Robert Lance Coral, shall remain in the custody of the Alabama Department of Corrections to await execution of sentence.
DONE this the 26th day of June, 1992.
 /s/ H. Randall Thomas ----------------- H. RANDALL THOMAS CIRCUIT JUDGE
[1] On original submission, we concluded that the trial court's sentencing order was deficient in that it did not comply with §13A-5-47(d) and (e), Code of Alabama 1975. On May 31, 1991, we remanded the case with instructions for the trial court to enter a proper order. Coral v. State, 585 So.2d 248
(Ala.Cr.App. 1991). On August 12, 1991, the trial court filed a new sentencing order; however, we again remanded. Coral v.State, 628 So.2d 954 (Ala.Cr.App. 1992).
[2] The decision of the jury to return an advisory verdict in a capital case recommending a sentence of life imprisonment without the possibility of parole must be based on a vote of a majority of the jurors. Ala. Code § 13A-5-46(f) (1975).