Curtis Lee Henderson was convicted on August 16, 1985, of the murder of Willie Lee Perkins, made capital by § 13A-5-40(a)(7), Alabama Code 1975. The jury returned an advisory verdict recommending punishment by death. A sentencing hearing was held on September 23, 1985, after which the trial court sentenced Henderson to death by electrocution.
Henderson appealed to the Court of Criminal Appeals, arguing that his right to due process had been violated because, he claimed, the prosecution had systematically used its peremptory strikes to exclude black individuals from the jury. His trial had taken place before the United States Supreme Court decidedBatson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712 90 L.Ed.2d 69
(1986), and this Court decided Ex parte Branch, 526 So.2d 609
(Ala. 1987).[1] On appeal, the Court of Criminal *Page 349 
Appeals heard arguments on this issue and remanded the cause to the trial court for a hearing pursuant to Ex parte Branch.Henderson v. State, 584 So.2d 841, 844 (Ala.Cr.App. 1988). The trial court complied.
On return to the remand, the Court of Criminal Appeals accepted the trial court's findings that the prosecutor had shown sufficiently race-neutral reasons for his peremptory strikes to comply with Branch and Scales v. State,539 So.2d 1074 (Ala. 1988). The Court of Criminal Appeals affirmed as to the other issues raised by Henderson. However, pursuant to Exparte Cochran, 500 So.2d 1179, 1187 (Ala. 1985), the cause was remanded to the trial court "to enter specific written findings as to whether [Henderson's] I.Q. [intelligence quotient] score constituted a non-statutory mitigating circumstance in this case." Henderson v. State, 584 So.2d 841, 862
(Ala.Cr.App. 1988).
The trial court complied, holding that Henderson's I.Q. score did not constitute a nonstatutory mitigating circumstance in this case. On return to the remand, the Court of Criminal Appeals affirmed Henderson's sentence, writing: "In light of the evidence presented, the trial court properly found that the appellant's intelligence quotient score of 68 was not a non-statutory mitigating circumstance." Id.
We granted certiorari review and remanded the case for the Court of Criminal Appeals to review the propriety of this death sentence pursuant to § 13A-5-53, Code of Alabama 1975, and to make findings consistent with the mandates of that statute. Exparte Henderson, 584 So.2d 862 (Ala. 1991). The Court of Criminal Appeals made the following findings pursuant to the mandates of the statute:
 "[I]n accordance with § 13A-5-53, we have reviewed the record, including the guilt and sentencing proceedings, for any error which adversely affected the rights of the appellant, and we have found none. Nor do we find any evidence that the sentence was imposed under influence of passion, prejudice, or any other arbitrary factor.
 "The trial court properly found the existence of one aggravating circumstance, that the murder was committed for pecuniary gain, § 13A-5-49(6), Code of Alabama 1975. The propriety of this aggravating circumstance was previously discussed. . . . The trial court also properly found the existence of one mitigating circumstance, the absence of a prior criminal record, § 13A-5-51(1), Code of Alabama 1975. The trial court properly found the existence of no non-statutory mitigating circumstances.
 "After an independent weighing of the aggravating and mitigating circumstances in this case, we find that the evidence supports the trial court's conclusion and indicates that death was the proper sentence. The sentence of death in this case is neither excessive nor disproportionate to the penalties imposed in similar cases, considering both the crime and the defendant."
Henderson v. State, 587 So.2d 1071 (Ala.Crim.App. 1991). (Citations omitted.)
Now that the Court of Criminal Appeals has made its findings pursuant to § 13A-5-53, the petition for writ of certiorari is resubmitted for the consideration of this Court. We first consider whether the Court of Criminal Appeals erred in its review of the propriety of the death sentence under the mandates of § 13A-5-53. We conclude that it did.
The Court of Criminal Appeals stated that "[t]he trial court . . . properly found the existence of one mitigating circumstance, the absence of a prior criminal record, §13A-5-51(1), Code of Alabama 1975." 587 So.2d 1071. The record reflects that the trial court had amended its findings on March 12, 1986, and had found that the defendant's age at the time of the offense (21 years) was a second mitigating factor, under §13A-5-51(7). Thus, the Court of Criminal Appeals affirmed this sentence based upon the erroneous belief that only one mitigating factor existed. *Page 350 
The Court of Criminal Appeals also affirmed the trial court's finding that Henderson's low I.Q. score did not constitute a nonstatutory mitigating circumstance. The United States Supreme Court held in Lockett v. Ohio, 438 U.S. 586, 606-08,98 S.Ct. 2954, 2965-67, 57 L.Ed.2d 973 (1978), that the Eighth and Fourteenth Amendments require that the sentencer not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. Id. at 604,98 S.Ct. at 2964. The Court held in Lockett that retardation may be a mitigating factor, specifically when the defendant had lacked specific intent.[2] The independent mitigating weight requirement of Lockett has been interpreted to mean that any relevant mitigating evidence must be considered by the court in order to ensure that capital sentencing is consistent with public standards of decency and fairness.[3]
The evidence showed without contradiction that Henderson is of very low intelligence. Henderson presented the testimony of Mary Oden, a therapist for Cheaha Mental Health Center. Ms. Oden, who has a master's degree in counseling, testified that she had administered the Wechsler Adult Intelligence Scale, the Wechsler Intelligence Scale for Children-Revised, and the Minnesota Multiphasic Personality Inventory to Henderson. The results of these tests gave Henderson a verbal I.Q. of 73, a performance I.Q. of 63, and a full scale I.Q. of 68. Ms. Oden testified that the score of 68 reflected mild retardation, that Henderson as an adult could achieve only a sixth-grade level of education, and that, when acting under stress, Henderson would need guidance and assistance.
Upon cross-examination, Ms. Oden was questioned as to whether the tests were valid. She replied by saying that because Henderson, when he was tested, did not have his glasses and was handcuffed, there was some question as to the validity of the tests. However, she explained that the fact that such circumstances were present when the tests were administered would not have affected Henderson's verbal score, but could have negatively affected the performance portion of the tests.
Based on the evidence before the trial court, this non-statutory mitigating circumstance should have been considered in the weighing process, and the trial court's rejection of it was erroneous. Thus, the Court of Criminal Appeals affirmed this conviction based upon the erroneous belief that there was only one mitigating factor, when in fact three existed. The error in the sentencing procedure and in the review by the Court of Criminal Appeals adversely affected the defendant's rights.
Also before us is the question of whether the Court of Criminal Appeals erred in finding on the return to the remand that "the sentence of death in this case is neither excessive nor disproportionate to the penalties imposed in similar cases, considering both the crime and the defendant." See §13A-5-58(b)(3). Henderson argues that the trial court and the Court of Criminal Appeals erred in failing to consider the fact that the sentence imposed in the companion case against defendant Cleveland Turner, Jr., was remitted from death by electrocution to life in prison without benefit of parole.
The trial judge's finding of fact, recited in Henderson v.State, 584 So.2d at 844, states that Cleveland Turner, Jr., had been having an affair with Christine Perkins, the wife of the victim, Willie Edward Perkins. Turner had been involved in an industrial accident, and he had received $38,000 in a worker's compensation settlement. Turner had given Christine Perkins money to go to Springfield, Ohio, and he had planned to *Page 351 
join her at a later date. Turner agreed to pay Henderson $2000 to "take care of" Willie Edward Perkins. Turner provided the .38 caliber pistol used in the murder.
Turner and Henderson were tried before different judges and before different juries. Both were found guilty of murdering Mr. Perkins. The jury recommended that Turner be punished by death, the vote being 10 for death and 2 for life imprisonment without benefit of parole. The trial judge in Turner's case, the Hon. William Sullivan, found as mitigating factors the fact that Turner had no significant history of prior criminal activity and Turner's low I.Q. (measured to be between 58 and 70), and he sentenced Turner to life without parole.
Counsel for Henderson points out that at the time of his crime Henderson was a 21-year old with no history of criminal activity and that he has been tested as having an I.Q. of between 63 and 73. The .38 caliber pistol Henderson used in the murder was provided by Turner, who gave it to Henderson's brother for the brother to give it to Henderson. The State argues that Henderson, as the triggerman, is more culpable than Turner, and thus that a sentence of death is appropriate for Henderson.
In light of our conclusion that the trial court, in sentencing Henderson, should have considered three mitigating circumstances, we instruct the trial court and the Court of Criminal Appeals to reconsider the question of whether the sentence of death in this case is excessive or disproportionate to the penalties imposed in similar cases, considering both the crime and the defendant. § 13A-5-53(b)(3).
For the reasons stated above, this cause is due to be remanded to the Court of Criminal Appeals with instructions to remand for the trial court to reweigh the aggravating and mitigating circumstances and to re-evaluate Henderson's sentence in light of this opinion. The trial judge should be instructed to resentence Henderson and, thereafter, to submit a written order including his findings and conclusions to the Court of Criminal Appeals, within 90 days. The judgment of the Court of Criminal Appeals is affirmed as to the other issues presented by Henderson.
AFFIRMED AS TO THE CONVICTION; REMANDED WITH INSTRUCTIONS AS TO SENTENCING.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] Although the trial court did not have the Batson or Branch
opinions for guidance, the record reflects that the trial judge did, following the striking of the jury, hold a hearing at which he required the prosecutor to state for the record the nature of the reasons for his strikes of black members of the venire.
[2] Section 13A-5-51 provides that mitigating circumstances shall include: "(6) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired."
[3] Donald H.J. Hermann, Howard Singer, Mary Roberts, Sentencingof the Mentally Retarded Criminal Defendant, 41 Ark.L.R. 765, at 795 (1988).