852 So.2d 801 (1999)
Taurus CARROLL
v.
STATE.
CR-97-1019.
Court of Criminal Appeals of Alabama.
August 27, 1999.
Opinion on Return to Remand November 19, 1999.
Rehearing Denied January 28, 2000.
*804 Joe W. Morgan, Jr., Birmingham, for appellant.
William H. Pryor, Jr., atty. gen., and A. Vernon Barnett IV, asst. atty. gen., for appellee.
LONG, Presiding Judge.
The appellant, Taurus Carroll, was convicted of murder made capital because it was committed during the course of a robbery in the first degree. See § 13A-5-40(a)(2), Ala.Code 1975. The jury, by a vote of 10-2, recommended that Carroll be sentenced to life imprisonment without parole. *805 The trial court overrode the jury's recommendation and sentenced Carroll to death.
The State's evidence tended to show the following. On Sunday, April 9, 1995, at approximately 4:00 p.m., Betty Long was shot and killed during a robbery of the dry-cleaning and coin-laundry business she owned with her husband, Raymond Long. On the day of the shooting, Mrs. Long was working alone at the dry-cleaning business, which was located at 4641 10th Avenue North in the Kingston area of Birmingham. Her husband, a Birmingham firefighter, was at work at the fire station. The Longs' daughter, Courtney, was home from college for the weekend, and had agreed to pick up her mother at the dry cleaning business at 4:00 p.m., the usual closing time.
Courtney Long testified that she arrived at the dry-cleaning business at approximately 4:00 p.m. to pick up her mother. Upon entering, she said, she noticed several customers at the back of the store, near the coin washers and dryers. Courtney stated that her mother then told her that they would not close until the customers had finished washing and drying their clothes. Courtney joined Mrs. Long behind the counter, near the cash register. According to Courtney, two men approached her and her mother, walked behind the counter, and pulled out guns. Courtney positively identified Carroll as one of the gunmen; she positively identified Carroll's codefendant, Mack Dailey,[1] as the other gunman. Courtney testified that Carroll stayed close to her and pointed his gun at her, while Dailey stood near Mrs. Long. She stated that Carroll demanded that she give him the necklace she was wearing and that Dailey demanded money from Mrs. Long. Courtney gave Carroll her necklace, and her mother gave Dailey the money in her purse, as well as money that was lying on the counter. She testified that she could not recall whether her mother had removed any money from the cash register. According to Courtney, Dailey then said, "There must be something else to steal." (R. 582.) At that point, Courtney looked at her mother, and then heard a gunshot. Courtney testified that her mother gasped, slumped over the counter, and then fell to the floor. Carroll and Dailey fled the scene. Courtney dialed the emergency 911 number and comforted her mother until the paramedics arrived. When the paramedics took Mrs. Long to the hospital, Courtney locked the dry-cleaning business, went home and packed a bag for her mother, and then went to the hospital. Courtney testified that at the time, she believed her mother was going to survive because she had remained conscious and was talking after she had been shot. That evening, Betty Long died from a gunshot wound to the abdomen.
On cross-examination, Courtney testified that Carroll appeared more nervous than Dailey during the robbery and that Carroll did not talk as much as Dailey did.
Alfred Streeter, an eyewitness, testified that he was at the back of the dry-cleaning business with his brother, Roderick Streeter, when he saw two men enter the store and walk behind the counter where Mrs. Long and her daughter were standing. Streeter positively identified Carroll as one of the men. Streeter stated that as *806 the men walked behind the counter, he saw one of them holding a shiny object behind his leg, as if he were "trying to hide it." (R. 503.) Streeter could not identify which man was holding the object. He stated that he could not identify the object, and that he did not see a gun. Streeter stated that he watched as Mrs. Long went to the cash register and opened it. He then turned to his brother and told him that he thought Mrs. Long was being robbed. At that point, Streeter said, he heard "a click" and then a gunshot. (R. 506.) According to Streeter, approximately 15 to 20 seconds passed between the click and the shot. Streeter stated that he saw the two men then flee the dry-cleaning business. He testified that he did not see which of the two men shot Mrs. Long.
Charles Underwood, an evidence technician with the Birmingham Police Department, testified that he collected evidence from the Longs' dry-cleaning business on the night of April 9, 1995. He arrived at the scene, along with several other officers, at approximately 7:55 p.m., and Raymond Long unlocked the business's doors and let them inside. Underwood took several photographs inside the dry-cleaning business and searched for spent shell casings. Under a pile of clothes behind the counter, Underwood found a spent shell casing from a .25 caliber handgun. Underwood testified that he found no fingerprints on the casing.
Dr. Robert Brissie, the chief coroner and medical examiner for Jefferson County, testified that he performed an external exam and an autopsy on Betty Long on the morning of April 10,1995. In addition, he examined certain clothes that had arrived with Mrs. Long's body and that were labeled as belonging to her. Dr. Brissie testified that Betty Long died as a result of a gunshot wound to the abdomen. Dr. Brissie removed the bullet that killed Mrs. Long and turned it over to the Alabama Department of Forensic Sciences. Dr. Brissie stated that he found no gunpowder around the entrance wound on Mrs. Long's body. This, he said, indicated that the gunshot came from a distance of at least 12 to 20 inches. He also stated that he examined the jeans Betty Long was wearing when she was shot. He stated that he found a hole in the jeans that "paralleled" the gunshot wound in Long's abdomen. Dr. Brissie testified that he found no gunpowder on the jeans, again indicating, he said, that the shot that killed Mrs. Long was fired from a distance of at least 12 to 20 inches.
Ed Moran, a firearms and toolmarks examiner with the Alabama Department of Forensic Sciences, testified that he examined a bullet he had received from Dr. Brissie. Moran testified that the bullet came from a .25 caliber automatic pistol. He stated that a .25 caliber pistol would not leave any gunpowder residue at a distance greater than 12 to 14 inches. On cross-examination, Moran testified that it would be possible to discharge a .25 caliber pistol accidently. He stated that during times of stress, people often lose fine-motor control in their hands.
John Ennis, a homicide detective with the Birmingham Police Department, testified that he was the lead investigator in Betty Long's homicide. Detective Ennis stated that, on April 10, 1995, after learning that Carroll may have been involved in the shooting, he and his partner, Detective David Lucas, picked up Carroll at his grandmother's house and transported him to the police station for an interview. Carroll was 17 years old at the time. Upon arriving at the station, Detective Lucas read Carroll his juvenile-Miranda rights. Detective Ennis testified that Carroll indicated that he understood his rights, that Carroll signed a waiver form to that effect, *807 and that he agreed to make a statement. Detective Ennis further testified that Carroll was not threatened or coerced into making a statement, and he was not promised anything in exchange for making a statement. Carroll then made a tape-recorded statement to the police in which he admitted shooting Betty Long, but in which he claimed that the shooting was an accident. Carroll stated that after the robbery, he gave the necklace he had taken from Courtney Long to a man named "Tank" and sold the gun he had used to a man named "Julio."
Detective Ennis testified that after this interview, he and Detective Lucas attempted to locate "Tank" and "Julio"; when they were unsuccessful in locating either individual, they conducted a second interview with Carroll. Carroll made a second statement to the police on April 12, 1995, after he was again informed of his juvenile-Miranda rights, after he indicated that he understood his rights, and after he signed a second waiver-of-rights form. Detective Ennis testified that Carroll was not threatened or coerced and that no promises were made to induce Carroll's statement. According to Detective Ennis, in that second statement, which was not tape-recorded, Carroll again stated that the shooting of Betty Long was an accident. Carroll stated that Mrs. Long was talking loudly and that his gun "just went off." (R. 645.) He further stated that the gun he used was a .25 caliber pistol, and that he was sorry the shooting had occurred.
At trial, Carroll's theory of defense was that the shooting was accidental. Although Carroll did not testify on his own behalf, Carroll's trial counsel argued to the jury, during both opening and closing arguments, that while Carroll had shot Betty Long, he did so accidentally, and he did not intend to kill her. Carroll's counsel conceded in his argument to the jury that Carroll was guilty of robbery and of felony murder; however, he maintained that because the shooting was accidental, Carroll was not guilty of capital murder.
On appeal, Carroll raises seven issues. However, because we must remand this case for resentencing, we address only those five issues relating to the guilt phase of Carroll's trial.

I.
Carroll contends that the trial court erred in denying his motion to dismiss the indictment based on the alleged "underrepresentation of certain cognizable groups in the composition" of the grand and petit juries in Jefferson County. (C. 110.) In this regard, Carroll maintains that the method of selecting jury venires in Jefferson County is "unconstitutional because it [does not produce] a fair cross section of the community." (Carroll's brief to this court, p. 15.) Specifically, he argues that the method of generating jury lists in Jefferson Countyrandom computerized selection of residents, using lists of individuals who have been issued driver's licensessystematically excludes persons of lower socioeconomic levels, blacks, women, and persons who are handicapped. Carroll presents no evidence that such groups were excluded from his own venire or from any other venire in Jefferson County; instead, he relies on the unsupported assertion that members of such groups are generally unable to afford or to obtain a driver's license, and therefore, that the use of driver's licenses to generate jury lists violates the fair cross-section requirement of the Sixth Amendment to the United States Constitution.
This court has observed that "`[r]andom selection from a list of licensed drivers has [repeatedly] been held to be an acceptable manner in which to select a jury.'" Stanton *808 v. State, 648 So.2d 638, 640 (Ala.Cr. App.1994), quoting Sistrunk v. State, 630 So.2d 147,149 (Ala.Cr.App.1993). See also Benefield v. State, 726 So.2d 286 (Ala.Cr. App.1998); Travis v. State, 776 So.2d 819 (Ala.Cr.App.1997); Smith v. State, 698 So.2d 189 (Ala.Cr.App.1996), aff'd, 698 So.2d 219 (Ala.), cert. denied, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997); Guthrie v. State, 689 So.2d 935 (Ala.Cr. App.1996); Dobyne v. State, 672 So.2d 1319 (Ala.Cr.App.1994); Stewart v. State, 623 So.2d 413 (Ala.Cr.App.1993); Joyce v. State, 605 So.2d 1243 (Ala.Cr.App.1992); Pierce v. State, 576 So.2d 236 (Ala.Cr.App. 1990), cert. denied, 576 So.2d 258 (Ala. 1991); Robinson v. State, 560 So.2d 1130 (Ala.Cr.App.1990); Jackson v. State, 560 So.2d 1100 (Ala.Cr.App.1989); Vaughn v. State, 485 So.2d 388 (Ala.Cr.App.1986); and Lopez v. State, 415 So.2d 1204 (Ala.Cr. App.1982). Accordingly, Carroll's claim in this regard lacks merit, and the trial properly denied his motion to dismiss the indictment.

II.
Carroll contends that the trial court erred in denying his motion to suppress his two custodial statements to the police. He argues that the statements were obtained through coercion and that they were involuntary and, therefore, inadmissible at his trial.
At a pretrial suppression hearing, David Lucas, a homicide detective with the Birmingham Police Department, testified that Carroll was picked up at his home on April 10, 1995, and was transported to the police station for questioning in connection with Betty Long's murder. Detective Lucas stated that when Carroll, who was 17 years old at the time, arrived at the station, he read Carroll his juvenile-Miranda rights. See Rule 11(B), Ala.R.Juv.P. Detective Lucas stated that Carroll indicated that he understood his rights and that he wanted to make a statement. Carroll then signed a waiver-of-rights form. Detective Lucas stated that neither he nor Detective John Ennis, who was also present during the questioning, threatened or coerced Carroll into making a statement. According to Detective Lucas, Carroll was not promised any reward for making a statement, and he was not told that making a statement would be better for him than not making a statement. Detective Lucas testified that during the interview he told Carroll to "[d]o something for yourself." (R. 37.) At the beginning of the interview, Carroll denied any involvement in the robbery or in the murder of Betty Long. However, he subsequently admitted to robbing the Longs' dry-cleaning business and to shooting Mrs. Long. In the interview, Carroll maintained that the shooting was an accident.
Two days later, on April 12, 1995, the police conducted a second interview with Carroll in the city jail. Detective Lucas testified that before Carroll gave this statement, he again read Carroll his juvenile-Miranda rights, and Carroll again indicated that he understood those rights and that he wanted to talk to the police. Detective Lucas testified that Carroll was not coerced or threatened into making the statement, nor, Detective Lucas said, was Carroll promised a reward for making a statement. Carroll signed a second waiver-of-rights form and then gave Detectives Lucas and Ennis a second statement. In this statement, Carroll again admitted that he shot Betty Long. He again maintained that the shooting was an accident, claiming that Mrs. Long was talking loudly when his gun accidentally discharged. Carroll stated that the gun was a .25 caliber pistol and that he was approximately 10 feet from Mrs. Long when the gun discharged. He stated that he was sorry that the shooting occurred.
*809 On appeal, Carroll contends that his two custodial statements were improperly admitted into evidence at his trial because, he says, they were "coerced and involuntary." (Carroll's brief to this court, p. 17.) Specifically, Carroll claims that Detective Lucas's comment to him during his first interview, "Do something for yourself," constituted an inducement for him to confess. He maintains that Detective Lucas's comment "clearly rises to the level of coercion." (Carroll's brief to this court, p. 18.)
At the outset, we note:
"Confessions and inculpatory statements are presumed to be involuntary and inadmissible. Ex parte Callahan, 471 So.2d 463 (Ala.1985). For a confession to be properly admitted, the State must prove that `"the defendant was informed of his Miranda rights and that the confession was voluntarily given."` Johnson v. State, 680 So.2d 1005, 1007 (Ala.Cr.App.1996)(quoting Mann v. State, 581 So.2d 22, 23 (Ala.Cr.App. 1991)).
"`"In determining whether a confession is voluntary, the trial court's finding of voluntariness need only be supported by a preponderance of the evidence. Seawright v. State, 479 So.2d 1362 (Ala.Cr.App.1985). The trial court's decision will not be disturbed on appeal unless it is manifestly contrary to the great weight of the evidence."'
"Howard v. State, 678 So.2d 302, 306 (Ala.Cr.App.1996) (quoting Dixon v. State, 588 So.2d 903, 907 (Ala.1991)).
"`"`In reviewing the correctness of the trial court's ruling on a motion to suppress, this Court makes all the reasonable inferences and credibility choices supportive of the decision of the trial court.'" Kennedy v. State, 640 So.2d 22, 26 (Ala.Cr.App.1993), quoting Bradley v. State, 494 So.2d 750, 761 (Ala.Cr.App.1985), aff'd, 494 So.2d 772 (Ala.1986), cert. denied, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987). A trial court's ruling on a motion to suppress will not be disturbed unless it is "palpably contrary to the great weight of the evidence." Parker v. State, 587 So.2d 1072, 1088 (Ala.Cr.App.1991).'
"Rutledge v. State, 680 So.2d 997, 1002 (Ala.Cr.App.1996)."
Maples v. State, 758 So.2d 1, 41 (Ala.Cr. App.1999).
When determining whether a confession is voluntary, a court must consider the totality of the circumstances surrounding the confession. Maples, 758 So.2d at 41. In McLeod v. State, 718 So.2d 727 (Ala.1998), the Alabama Supreme Court stated:
"It has long been held that a confession, or any inculpatory statement, is involuntary if it is either coerced through force or induced through an express or implied promise of leniency. Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). In Culombe [v. Connecticut], 367 U.S. [568,] 602, 81 S.Ct. [1860,] 1879, [6 L.Ed.2d 1037 (1961) ], the Supreme Court of the United States explained that for a confession to be voluntary, the defendant must have the capacity to exercise his own free will in choosing to confess. If his capacity has been impaired, that is, `if his will has been overborne ` by coercion or inducement, then the confession is involuntary and cannot be admitted into evidence. Id. (emphasis added).
"....
"... Thus, the test of involuntariness of a confession, or other inculpatory statement, is not whether the defendant bargained with the police, but whether in his discussions with the police, which *810 may have included bargaining, the defendant's will was overborne by `apprehension of harm or hope of favor.' See [Ex parte] Gaddy, [698 So.2d 1150, 1154 (Ala.1997) ](quoting Ex parte Weeks, 531 So.2d 643, 644 (Ala.1988)); Culombe, 367 U.S. at 602, 81 S.Ct. at 1879; Jackson [v. State, 562 So.2d 1373, 1380 (Ala.Cr. App.1990) ]. To determine if a defendant's will has been overborne, we must assess `the conduct of the law enforcement officials in creating pressure and the suspect's capacity to resist that pressure'; `[t]he defendant's personal characteristics as well as his prior experience with the criminal justice system are factors to be considered in determining [the defendant's] susceptibility to police pressures.' Jackson, 562 So.2d at 1380-81 (citations omitted)."
718 So.2d at 729-30.
After considering the totality of the circumstances, we conclude that Carroll's will was not overborne by pressure from the police and, therefore, that his statements were voluntary. At the suppression hearing, Detective Lucas testified that before both interviews, Carroll was read his juvenile-Miranda rights. Both times, Detective Lucas said, Carroll indicated that he understood those rights, that he wished to waive them, and that he wanted to make a statement. Detective Lucas testified that he did not coerce or threaten Carroll into giving a statement, and that he did not promise Carroll anything in return for making a statement. Furthermore, the evidence relating to the interviews indicates that Carroll was not held for an inordinate length of time and that he was not deprived of food or sleep. It is also clear from the record that although Carroll was only 17 years old at the time he made the statement, he had had extensive experience with the criminal justice system.
Under the circumstances, we do not believe that Detective Lucas's comment to Carroll, "Do something for yourself," constituted an inducement for Carroll to confess or that it rose to the level of coercion. Detective Lucas testified at the suppression hearing that in making this comment to Carroll, he was telling Carroll "to do what he wants to do, to do his statement." (R. 38.) Detective Lucas specifically testified that he did not coerce or threaten Carroll into giving a statement and that he did not promise Carroll anything in return for making a statement. Carroll, however, maintains that he construed Detective Lucas's comment to be an implied promise that he would be better offthat "he could help himself"if he confessed. (Carroll's brief to this court, p. 18.) However, it is well settled that a comment by police to a suspect under questioning that it would be better to make a statement does not constitute coercion or an improper inducement sufficient to render a subsequent confession involuntary. See Eakes v. State, 387 So.2d 855, 860 (Ala.Cr.App.1978). See also Craig v. State, 719 So.2d 274, 279 (Ala.Cr.App.1998) (remark by police that it would be in the appellant's best interest to make a statement did not render the appellant's confession involuntary); Davis v. State, 728 So.2d 192, 194 (Ala.Cr.App.1997) (remark by police that the appellant "need[ed] to cooperate and help hi[m]self" did not render the appellant's confession involuntary); Brown v. State, 668 So.2d 102, 104 (Ala.Cr. App.1995) (remark by police that the appellant should help himself did not render the appellant's confession involuntary); Webb v. State, 447 So.2d 864, 866 (Ala.Cr. App.1984) (remark by police that "it would look better for him" if he made a statement did not render the appellant's confession involuntary); Phelps v. State, 435 So.2d 158, 161 (Ala.Cr.App.1983) ("The fact that a police officer tells the accused *811 that it would be better to make a statement or to tell the truth does not constitute an improper inducement."); Raines v. State, 428 So.2d 206, 213 (Ala.Cr.App.1983) (remark by police that the appellant "would be better off if he confessed" did not render the appellant's confession involuntary).
Based on the totality of the circumstances, we hold that Carroll's statements were made voluntarily. Neither Detective Ennis nor Detective Lucas promised Carroll that he would receive favorable treatment if he made a statement, and the comment by Detective Lucas did not rise to the level of an implied inducement or coercion. Because Carroll made his custodial statements voluntarily, after being properly advised of his juvenile-Miranda rights, the trial court did not err in denying Carroll's motion to suppress the statements.

III.
Carroll also contends that the trial court erred in denying his motion for a judgment of acquittal because, he says, the State's evidence was insufficient to sustain his conviction for capital murder. (Issues III and IV in Carroll's brief to this court.)
"`"In reviewing the sufficiency of the evidence the appellate courts of this State are bound by several well settled rules. It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt and to a moral certainty. Instead, the function of this Court is to determine whether there is legal evidence from which a jury could by fair inference find the defendant guilty. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.), cert. denied, 368 So.2d 877 (Ala.1979); Scruggs v. State, 359 So.2d 836, 842 (Ala.Cr.App.), cert. denied, 359 So.2d 843 (Ala.1978).
"`"In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State and accord the State all legitimate inferences therefrom. Ellis v. State, 338 So.2d 428 (Ala.Cr.App.1976); Edson v. State, 53 Ala.App. 460, 301 So.2d 226 (1974). The evidence must be considered in the light most favorable to the prosecution. Colston v. State, 57 Ala. App. 4, 325 So.2d 520, cert. denied, 295 Ala. [398], 325 So.2d 531 [ (1976) ].
"`"Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Bell v. State, 339 So.2d 96 (Ala. Cr.App. [1976]). A verdict of conviction will not be set aside on the ground of insufficiency of the evidence, unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this Court that it was wrong and unjust. Bridges v. State, 284 Ala. 412, 225 So.2d 821 (1969); Morton v. State, 338 So.2d 423 (Ala.Cr.App. 1976).

"`Freeman v. State, 505 So.2d 1079 (Ala. Cr.App.1986), quoting, Johnson v. State, 378 So.2d 1164, 1169 (Ala.Cr.App.1979), writ quashed by Ex parte Johnson, 378 So.2d 1173 (Ala.1979).'"
Anderson v. State, 542 So.2d 292, 295-96 (Ala.Cr.App.1987), quoted in Bankhead v. State, 585 So.2d 97, 104 (Ala.Cr.App.1989), aff'd in part, remanded, 585 So.2d 112 (Ala.1991), aff'd on return to remand, 625 So.2d 1141 (Ala.Cr.App.1992), rev'd on unrelated *812 grounds, 625 So.2d 1146 (Ala.1993), quoted with approval in Pilley v. State, 789 So.2d 870, 875 (Ala.Cr.App.1998).
Carroll advances two arguments concerning the sufficiency of the State's evidence; we address each argument separately.

A.
First, Carroll argues that the evidence was insufficient because, he says, the State failed to prove that he intended to kill Betty Long. Specifically, he argues that under his theory of the evidence, he "[lost] fine motor control in his hands" due to Mrs. Long's "loud noises" and, as a result, accidentally shot Mrs. Long; thus, he says, the jury could not have found that he had the intent to kill. (Carroll's brief to this court, p. 20.)
The State presented sufficient evidence from which a jury could conclude that Carroll had the specific intent to kill. "`"Intent, being a state of mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses in the circumstances as developed by and through the evidence."'" Pilley, 789 So.2d at 876, quoting Hunt v. State, 642 So.2d 999, 1008 (Ala.Cr.App.1993). Intent "may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances." Farrior v. State, 728 So.2d 691, 695 (Ala.Cr.App. 1998), quoting Jones v. State, 591 So.2d 569, 574 (Ala.Cr.App.1991), quoting, in turn, Johnson v. State, 390 So.2d 1160, 1167 (Ala.Cr.App.), cert. denied, 390 So.2d 1168 (Ala.1980). See also Scanland v. State, 473 So.2d 1182, 1185 (Ala.Cr.App.), cert. denied, 474 U.S. 1035, 106 S.Ct. 602, 88 L.Ed.2d 581 (1985) ("[i]ntent may be inferred from the use of a deadly weapon").
At trial, Carroll's counsel conceded that Carroll and his codefendant, Dailey, entered the Longs' dry-cleaning business with loaded guns[2] and with the intent to rob Betty Long. Carroll's counsel also conceded (and Carroll admitted in his statements to the police) that after Carroll and Dailey had taken money and jewelry from Mrs. Long and her daughter, Carroll shot Mrs. Long in the abdomen with his pistol. An eyewitness, Alfred Streeter, testified that he heard a click some 15 to 20 seconds before the gunshot. Contrary to Carroll's claim in his statement to the police, Courtney Long testified that her mother was not arguing with or shouting at the gunmen at any time during the incident. She further testified that both she and her mother cooperated with the gunmen and gave them money and jewelry. There was evidence showing that Carroll and Dailey fled the scene immediately after the shooting and subsequently divided the money they had obtained in the robbery; both ended up with $45.
The State's evidence was sufficient to support a reasonable inference by the jury that Carroll had the intent to kill Mrs. Long when he shot her. The fact that the defense's version of events conflicted with the State's version did not render the evidence insufficient; any conflict in the evidence was a matter of weight and credibility to be resolved by the jury. "Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence established a prima facie case." Ingram v. State, 729 So.2d 883, 895 (Ala.Cr.App.1998). As we stated in Farrior, supra:
"Conflicting evidence of intent presents a question for the jury to resolve. Bartlett *813 v. State, 701 So.2d 305 (Ala.Cr.App. 1997). Where the evidence presented raised questions of fact for the jury, `"[a]bsent clear and convincing evidence to the contrary, the jury's finding will not be reversed on appeal."` Hoobler v. State, 668 So.2d 905, 906 (Ala.Cr.App. 1995), quoting Pugh v. State, 536 So.2d 99, 100 (Ala.Cr.App.1986); see also Page v. State, 487 So.2d 999, 1007 (Ala.Cr. App.1986) (finding that the question of intent is a question for the jury)."
728 So.2d at 696.
The State's evidence was sufficient to support a finding that Carroll intended to kill Betty Long.

B.
Carroll also argues that the evidence was insufficient because, he says, the State failed to prove that he was the individual who fired the fatal shot. In his appellate brief, Carroll concedes that this argument becomes moot if this court holds that his statements to the police were properly admitted into evidence at his trial; however, he argues that if his custodial statements are excluded from consideration, the State's evidence was insufficient to prove that he was the triggerman and that, if this is the case, he could not be convicted of capital murder. We have already held that Carroll's statements were voluntary and thus were properly admitted into evidence (see Part II of this opinion). However, in an abundance of caution, we will briefly address Carroll's argument that, without the admission of his custodial statements, the evidence was insufficient to sustain his conviction for capital murder.
Carroll's argument notwithstanding, it was not incumbent upon the State to prove that Carroll was the triggerman in order to convict him of capital murder. It is well settled that "`"a non-triggerman can be convicted of a capital offense if he was a knowing accomplice to the intentional killing itself."'" Travis, supra, 776 So.2d at 864, quoting Arthur v. State, 711 So.2d 1031, 1058 (Ala.Cr.App.1996), aff'd, 711 So.2d 1097 (Ala.1997), quoting, in turn, Lewis v. State, 456 So.2d 413, 416-17 (Ala. Cr.App.1984). "`"`The accomplice liability doctrine may be used to convict a non triggerman accomplice if, but only if, the defendant was an accomplice in the intentional killing as opposed to being an accomplice merely in the underlying felony.'"'" Travis, 776 So.2d at 864, quoting Arthur, 711 So.2d at 1058, quoting, in turn, Lewis, 456 So.2d at 416-17, quoting, in turn, Ex parte Raines, 429 So.2d at 1112.
Here, the trial court properly instructed the jury on complicity and on the intent necessary for a capital conviction. Therefore, even absent proof that Carroll was the actual triggerman, Carroll's conviction for capital murder would still be upheld. (See Part III.A. of this opinion, wherein we hold that there was sufficient evidence of Carroll's intent to kill to sustain his conviction for capital murder.)
The State presented ample evidence that Carroll was indeed the triggerman. As we have noted, Carroll, in his statements to the police, admitted shooting Mrs. Long. The State also provided further evidence that Carroll was the individual who fired the fatal shot. Forensic testimony established that the fatal shot was fired from at least 12 inches away. Eyewitness testimony established that Dailey, and not Carroll, was standing next to Mrs. Long when she was shot. Carroll, the testimony showed, was standing some distance away from Mrs. Long, near her daughter, when the shot was fired. The evidence concerning Carroll's distance from Mrs. Long, and Dailey's proximity to her, permitted the jury to reasonably conclude that the fatal shot could only have *814 come from Carroll's gun, not from Dailey's. Viewed in a light most favorable to the State, this evidence was sufficient to establish that Carroll was the triggerman.
The State's evidence was sufficient to sustain Carroll's conviction for capital murder. Therefore, the trial court properly denied Carroll's motion for a judgment of acquittal.

IV.
Carroll contends that the trial court erred in refusing his request that the jury be instructed on the lesser included offense of reckless manslaughter. He argues that such a charge should have been given because, he says, there was evidence that the shooting was accidental and that he had no intent to kill Betty Long. We find no merit to this claim.
Section 13A-1-9(b), Ala.Code 1975, states that "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." In Smith v. State, 756 So.2d 892, 905 (Ala.Cr.App.1997), this court stated:
"`"A defendant accused of a greater offense is entitled to have the trial court charge on any lesser included offense if there is any reasonable theory from the evidence to support the lesser charge, regardless of whether the state or the defendant offers the evidence. Ex parte Pruitt, 457 So.2d 456 (Ala.1984); Parker v. State, 581 So.2d 1211 (Ala.Cr.App. 1990), cert. denied, 581 So.2d 1216 (Ala. 1991). A court may properly refuse to charge on a lesser included offense ... when ... it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense ... Anderson v. State, 507 So.2d 580 (Ala.Cr.App.1987)."'"
Quoting Boyd v. State, 699 So.2d 967, 972 (Ala.Cr.App.1997).
Here, there was no reasonable theory from the evidence to support a jury charge on the lesser included offense of reckless manslaughter. Carroll, in both of his statements to the police, admitted killing and robbing Betty Long. At trial, his counsel conceded, during opening and closing arguments, that Carroll was guilty of robbery and of felony murder. Carroll's counsel argued only that Carroll was not guilty of capital murder, which requires an intentional killing, because, counsel said, Carroll shot Mrs. Long accidentally and did not intend to kill her. However, because the evidence that Carroll committed the robbery was clear and undisputed and because the evidence that Mrs. Long was killed during the course of that robbery was also clear and undisputed, the evidence presented at trial (as well the defense's theory of the evidence) at the very least placed Carroll's crime within the definition of felony murder, not reckless manslaughter. In Tucker v. State, 650 So.2d 534, 536 (Ala.Cr.App.1994), we faced this identical issue, and stated:
"`This argument fails because an unintentional killing during the course of a robbery is, nevertheless, first degree murder under the felony-murder doctrine, and the evidence was undisputed that ... [the] victim [was killed] during the course of ... [a] robb[ery].'"
Quoting Coulter v. State, 438 So.2d 336, 344 (Ala.Cr.App.1982), aff'd, 438 So.2d 352 (Ala.1983). Even if the jury had found that Carroll did not intend to kill Betty Long, the jury, in view of the other clear and undisputed evidence, would have been justified only in finding Carroll guilty of felony murder, not reckless manslaughter. Because there was no reasonable theory from the evidence to support a recklessmanslaughter *815 charge, the trial court did not err in refusing to so instruct the jury.
However, even assuming that the trial court's refusal to instruct the jury on reckless manslaughter was error (which we do not find to be the case), it was harmless error. Because the trial court instructed the jury on capital murder, intentional murder, and felony murder, and the jury convicted Carroll of the higher offense of capital murder, any error in the trial court's refusal to charge on reckless manslaughter was harmless. See, e.g., Wilkerson v. State, 686 So.2d 1266, 1274 (Ala.Cr.App.1996); and Moore v. State, 647 So.2d 43, 45-46 (Ala.Cr.App.1994).

V.
In accordance with Rule 45A, Ala. R.App.P., and § 13A-5-53, Ala.Code 1975, we have examined the entire record in this case for any plain error in Carroll's conviction or sentence, whether or not it was brought to our attention or to the attention of the trial court. We find no plain error in the guilt phase of Carroll's trial; therefore, we affirm Carroll's conviction for the capital offense of murder committed during a robbery in the first degree. See § 13A-5-40(a)(2), Ala.Code 1975. However, for the reasons stated below, we find it necessary to remand this case to the trial court for resentencing.
After Carroll was convicted of capital murder, a sentencing hearing was held in accordance with § 13A-5-45 and § 13A-5-46, Ala.Code 1975. After hearing evidence concerning the aggravating and mitigating circumstances, and after being properly instructed by the trial court as to the applicable law, the jury returned, by a vote of 10-2, a recommendation that Carroll be sentenced to life imprisonment without parole. Thereafter, the trial court held another hearing, in accordance with § 13A-5-47, Ala.Code 1975, to determine whether it would sentence Carroll to life imprisonment without parole, as the jury recommended, or to death. The trial court ordered and received a written presentence investigation report, as required by § 13A-5-47(b). After hearing evidence regarding the aggravating and mitigating circumstances, and duly considering the jury's recommendation of life imprisonment without parole, the trial court overrode the jury's recommendation and sentenced Carroll to death. The trial court entered specific written findings concerning the aggravating circumstances enumerated in § 13A-5-49, Ala.Code 1975, the mitigating circumstances enumerated in § 13A-5-51, Ala.Code 1975, and any mitigating circumstance found to exist under § 13A-5-52, Ala.Code 1975, as well as written findings of fact summarizing the offense and Carroll's participation in the offense. It is in the trial court's written findings that we find error.
In its findings of fact, the trial court found the existence of one statutory aggravating circumstance: that the murder was committed while Carroll was engaged in the commission of a robbery. See § 13A-5-49(4), Ala.Code 1975. The trial court found the existence of one statutory mitigating circumstance: that Carroll was 17 years old at the time of the offense. See 13A-5-51(7), Ala.Code 1975. In addition, pursuant to § 13A-5-52, Ala.Code 1975, the trial court heard testimony from Carroll's grandmother regarding his character and background, and found that the following evidence constituted nonstatutory mitigation: (1) evidence of Carroll's family background; and (2) evidence that Carroll's grandmother loved him and did not want him put to death.
In its written findings regarding the existence and nonexistence of statutory mitigating factors, the trial court specifically found as follows:

*816 "The Court finds that the following mitigating circumstances do not exist in this case:
"A. The defendant has no significant history of prior criminal activity. The Court is aware of the fact that the defendant had just gotten out of the penitentiary on December 24, 1994, just four months before this incident, where the defendant was serving time on four Youthful Offender convictions involving alleged burglaries while armed. The Court is aware that it cannot consider and has not considered these prior convictions as an aggravating circumstance herein; however, this Court has considered the circumstances and behavior surrounding the prior arrests to which the defendant has admitted and which were included in the presentence report."
(C. 246-47.) (Emphasis added.)
The trial court erred in using Carroll's prior youthful offender adjudications to negate the statutory mitigating circumstance of "no significant history of prior criminal activity," § 13A-5-51(1), Ala.Code 1975. Alabama law is clear that youthful offender adjudications are not convictions. See § 15-19-7, Ala.Code 1975 (a youthful offender determination "shall not be deemed a conviction of a crime"). Because only convictions can negate the statutory mitigating circumstance of "no significant history of prior criminal activity," see Parker v. State, 587 So.2d 1072 (Ala.Cr.App. 1991), a youthful offender adjudication cannot be used to negate that statutory mitigating circumstance. As we stated in Burgess v. State, 811 So.2d 557, 605 (Ala.Cr. App.1998):
"Because juvenile adjudications are not convictions under Alabama law, they cannot be considered as prior criminal activity under Alabama's capital sentencing scheme. Ex parte Davis, 718 So.2d 1166, 1178 (Ala.1998); Freeman v. State, 555 So.2d 196, 212 (Ala.Cr.App.), aff'd, 555 So.2d 215 (Ala.1989), cert. denied, 496 U.S. 912, 110 S.Ct. 2604, 110 L.Ed.2d 284 (1990). See Baldwin [v. State], 456 So.2d [117] at 125 [(Ala.Cr.App.1983), aff'd, 456 So.2d 129 (Ala.1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985) ].... Thus, juvenile adjudications cannot negate the statutory mitigating circumstance that the defendant has no significant history of prior criminal activity. Freeman, 555 So.2d at 212. Only convictions can negate that statutory mitigating circumstance. Id."
(Emphasis added.)
Therefore, we hold that the trial court erred in using Carroll's prior youthful offender adjudications to negate the existence of the statutory mitigating circumstance of "no significant history of prior criminal activity." Accordingly, this case is due to be remanded to the trial court with directions that that court make new findings as to the aggravating and mitigating circumstances in Carroll's case and reevaluate Carroll's sentence in light of this opinion. See Ex parte Henderson, 616 So.2d 348 (Ala.1992) (remanding a case for resentencing where the trial court failed to find the existence of three mitigating circumstances); Barnes v. State, 727 So.2d 839 (Ala.Cr.App.1997) (remanding a case for resentencing where the trial court improperly found the existence of an aggravating circumstance and improperly found one mitigating circumstance not to exist); and Hadley v. State, 575 So.2d 145 (Ala.Cr.App.1990) (remanding a case for resentencing where the trial court improperly found the existence of one aggravating circumstance and improperly found one mitigating circumstance not to exist). The trial court is further directed to resentence Carroll and, thereafter, to submit an *817 order satisfying the requirements of §§ 13A-5-47(d) and 13A-5-47(e), Ala.Code 1975, and including its findings of fact and conclusions to this court within 90 days. Because the trial court overrode the jury's recommended sentence of life imprisonment without parole, it will not be necessary for the trial court to conduct another sentencing-phase hearing before the jury. Nor will it be necessary for the trial court to consider additional evidence or argument from the parties.
AFFIRMED AS TO THE CONVICTION; REMANDED WITH DIRECTIONS AS TO SENTENCING.
McMILLAN, BASCHAB, and FRY, JJ., concur.
COBB, J., concurs specially, with opinion.
COBB, Judge, concurring specially.
Although I concur with the majority opinion, I must write separately to address the issue raised in Part V of its opinion. I concur with the majority that juvenile adjudications and youthful offender adjudications are not convictions and cannot negate the statutory mitigating circumstance that the defendant has no significant history of prior criminal activity. Freeman v. State, 555 So.2d 196, 212 (Ala.Cr.App.1988), aff'd, 555 So.2d 215 (Ala.1989), cert. denied, 496 U.S. 912, 110 S.Ct. 2604, 110 L.Ed.2d 284 (1990). I also concur with the majority's conclusion that, because the trial court negated that statutory mitigating circumstance because of Carroll's prior youthful offender adjudications, the case must be remanded for resentencing. However, I write separately to emphasize that juvenile adjudications and youthful offender adjudications may be used by the trial court in assessing what weight is to be accorded the statutory mitigating circumstances.
This court discussed this very issue in Burgess v. State, 811 So.2d 557, 606 (Ala. Cr.App.1998):
"[T]he courts of this state have never held that the trial court must entirely ignore a defendant's juvenile adjudications in performing its `weighing' duties. The trial court's consideration of a defendant's juvenile adjudications when conducting the weighing process offends neither general constitutional principles nor specific provisions of Alabama law. In fact, Alabama's capital punishment statute contemplates that the trial court will have any prior juvenile record of the defendant before it when it is deciding upon the proper sentence: pursuant to § 13A-5-47, Ala.Code 1975, the trial court is required to consider the presentence report of a defendant convicted of capital murder, and Rule 26.3(b)(2), Ala. R.Crim.P., specifically provides for the inclusion of the defendant's prior juvenile record in the presentence report.
"To hold that the trial court is prohibited from considering a defendant's juvenile adjudications in its individualized assessment of the weight to assign to the statutory mitigating circumstance of `no significant history of prior criminal activity' would obligate the trial court to assign precisely the same weight to this mitigating circumstance in every case where, such as here, a juvenile defendant is convicted of capital murder. Under this view of the capital sentencing scheme, two juveniles, both the same age and convicted of capital murder, one with no prior juvenile record and the other with a very significant prior juvenile record, would necessarily benefit equally from the statutory mitigating circumstance of `no significant history of prior criminal activity.' This would amount to an endorsement of the sort of numerical `tallying' disallowed by § 13A-5-48, Ala.Code 1975, and an abjuration *818 of the weighing function mandated by § 13A-5-47(e), Ala.Code 1975."
In accordance with our holding in Burgess, I remind the trial court that it may, consistent with Alabama law, deem Carroll's juvenile and youthful offender adjudications to be a relevant consideration in its assessment of the weight to assign to the statutory mitigating circumstances of Carroll's lack of a significant criminal history and of Carroll's age at the time of the offense.

On Return to Remand
LONG, Presiding Judge.
On August 27, 1999, we remanded this cause, in which the death penalty was imposed, to the trial court for resentencing. We directed that court to make new findings as to the aggravating and mitigating circumstances and to reevaluate Carroll's sentence in light of our opinion. Specifically, we found that the trial court had erred in using Carroll's prior youthful offender adjudications to negate the existence of the statutory mitigating circumstance of "no significant history of prior criminal activity." On September 29, 1999, the trial court, on its return to our remand order, submitted an amended sentencing order that satisfies the statutory requirements, specifically finding that the statutory mitigating circumstance of "no significant history of prior criminal activity" existed in Carroll's case. The trial court then reweighed the aggravating and mitigating circumstances and again overrode the jury's recommendation of life imprisonment without parole and sentenced Carroll to death.
In our opinion remanding the case to the trial court for resentencing, we addressed the issues raised by Carroll regarding the guilt phase of his trial and reviewed the record of the guilt phase for plain error; we found no error, plain or otherwise, and affirmed Carroll's conviction for capital murder. However, we pretermitted discussion of those issues relating to Carroll's death sentence. Now, having the trial court's amended sentencing order before us, we will address those issues Carroll raised concerning his death sentence. We will also review the death sentence in accordance with the requirements of § 13A-5-53, Ala.Code 1975, and we will review the record of the sentencing phase of Carroll's trial for plain error, as required by Rule 45A, Ala.R.App.P.

I.
Carroll contends that the trial court erred in overriding the jury's recommendation of life imprisonment without parole because, he says, "the trial court should not be allowed to cast aside the recommendation of the jury." (Issue VI in Carroll's brief to this court.) Carroll concedes that state and federal caselaw does not support his position, but nevertheless urges this court to reexamine this issue. We are unpersuaded by Carroll's argument. The United States Supreme Court has upheld the validity of the judicial override of advisory jury verdicts. See Harris v. Alabama, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995); Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990); and Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). See also Jackson v. State, 836 So.2d 915 (1999); Roberts v. State, 735 So.2d 1244 (Ala.Cr.App.1997); Knotts v. State, 686 So.2d 431 (Ala.Cr.App. 1995), on return to remand, 686 So.2d 484 (Ala.Cr.App.1995), aff'd, 686 So.2d 486 (Ala.1996), cert. denied, 520 U.S. 1199, 117 S.Ct. 1559, 137 L.Ed.2d 706 (1997); Bush v. State, 695 So.2d 70 (Ala.Cr.App.1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997); Coral v. State, 628 So.2d 988 (Ala. Cr.App.1992), aff'd, 628 So.2d 1004 (Ala.1993), *819 cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994); and McMillian v. State, 594 So.2d 1253 (Ala. Cr.App.1991), remanded on other grounds, 594 So.2d 1288 (Ala.1992). Accordingly, we find no merit to Carroll's claim.

II.
Carroll also contends that the death sentence constitutes cruel and unusual punishment in his case because, he says, the State failed to prove that he intended to kill the victim. (Issue VII in Carroll's brief to this court.) Therefore, he claims that his conviction and sentence should be reversed. Because the substance of this claim has already been decided adversely to Carrollwe held in our original opinion affirming Carroll's capital murder conviction that there was sufficient evidence of Carroll's intent to kill the victimwe turn now to the propriety of Carroll's death sentence.
In accordance with Rule 45A, Ala.R.App. P., we have examined the record for any plain error with respect to Carroll's capital murder conviction and his death sentence, whether or not brought to our attention or to the attention of the trial court. As we stated above, in our original opinion we found no plain error or defect in the guilt phase proceedings and we affirmed Carroll's capital murder conviction. Likewise, we now find no plain error or defect in the sentencing phase proceedings of Carroll's trial.
We have also reviewed Carroll's sentence in accordance with § 13A-5-53, Ala. Code 1975, which requires that, in addition to reviewing the case for any error involving Carroll's capital murder conviction, we shall also review the propriety of the death sentence. This review shall include our determination of the following: (1) whether any error adversely affecting Carroll's rights occurred in the sentence proceedings; (2) whether the trial court's findings concerning the aggravating and mitigating circumstances were supported by the evidence; and (3) whether death is the appropriate sentence in the case. Section 13A-5-53(b) requires that, in determining whether death is the proper sentence, we determine: (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether an independent weighing by this court of the aggravating and mitigating circumstances indicates that death is the proper sentence; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and Carroll.
After the jury convicted Carroll of the capital offense charged in the indictment, a separate sentencing hearing was held before the jury in accordance with §§ 13A-5-45 and -46, Ala.Code 1975. The jury recommended a sentence of life imprisonment without the possibility of parole by a vote of 10-2. Thereafter, the trial court held another hearing, in accordance with § 13A-5-47, Ala.Code 1975, to aid it in determining whether it would sentence Carroll to death or to life imprisonment without parole as recommended by the jury. Upon conclusion of the hearing, the trial court entered specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49, Ala.Code 1975, each mitigating circumstance enumerated in § 13A-5-51, Ala.Code 1975, and any mitigating circumstances found to exist under § 13A-5-52, Ala.Code 1975. The trial court's written findings also summarized the offense and Carroll's participation in it.
In its amended order, the trial court found the existence of one statutory aggravating circumstance: that the murder was committed while Carroll was engaged in *820 the commission of a robbery, see § 13A-5-49(4), Ala.Code 1975. The trial court found the existence of two statutory mitigating circumstances: (1) that Carroll was 17 years old at the time of the offense, see § 13A-5-51(7), Ala.Code 1975; and (2) that Carroll had no significant history of prior criminal activity, see § 13A-5-51(1), Ala.Code 1975. Although the trial court found that the mitigating circumstance of "no significant history of prior criminal activity" existed, it stated in its amended order that it considered Carroll's prior juvenile adjudications in assessing the weight it would afford that mitigating circumstance. Pursuant to § 13A-5-52, Ala. Code 1975, the trial court heard testimony from Carroll's grandmother regarding his character and background, and found that the following evidence constituted nonstatutory mitigation: (1) evidence of Carroll's family background; and (2) evidence that Carroll's grandmother loved him and did not want him put to death. In addition, the trial court considered the jury's recommendation of life imprisonment without parole as a nonstatutory mitigating factor.
The trial court's sentencing order reflects that after considering all the evidence presented, the arguments of counsel, the presentence report, and the advisory verdict of the jury and after weighing the aggravating circumstance against the statutory and nonstatutory mitigating circumstances, the trial court found that the aggravating circumstance outweighed the mitigating circumstances. The trial court's findings concerning the aggravating circumstances and the mitigating circumstances are supported by the evidence.
Carroll was convicted of the offense of murder committed during the course of a robbery. This offense is defined by statute as a capital offense. See § 13A-5-40(a)(2), Ala.Code 1975. We take judicial notice that similar crimes have been punished capitally throughout the state. See, e.g., Burgess v. State, 811 So.2d 557 (Ala. Cr.App. 1998); Clemons v. State, 720 So.2d 961 (Ala.Cr.App.1996), aff'd, 720 So.2d 985 (Ala.1998), cert. denied, 525 U.S. 1124, 119 S.Ct. 907, 142 L.Ed.2d 906 (1999); Williams v. State, 710 So.2d 1276 (Ala.Cr. App.1996), aff'd, 710 So.2d 1350 (Ala.), cert. denied, 524 U.S. 929, 118 S.Ct. 2325, 141 L.Ed.2d 699 (1998); Kuenzel v. State, 577 So.2d 474 (Ala.Cr.App.1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991); Brownlee v. State, 545 So.2d 151 (Ala.Cr. App.1988), aff'd, 545 So.2d 166 (Ala.), cert. denied, 493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161 (1989); Hallford v. State, 548 So.2d 526 (Ala.Cr.App.1988), aff'd, 548 So.2d 547 (Ala.), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989); Davis v. State, 536 So.2d 110 (Ala.Cr.App. 1987), aff'd, 536 So.2d 118 (Ala.1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1766, 104 L.Ed.2d 201 (1989); and Cochran v. State, 500 So.2d 1161 (Ala.Cr.App.1984), aff'd in part, rev'd in part, 500 So.2d 1179 (Ala. 1985), aff'd on return to remand, 500 So.2d 1188 (Ala.Cr.App.), aff'd, 500 So.2d 1064 (Ala.1986), cert. denied, 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 537 (1987).
After carefully reviewing the record of the guilt phase and the sentencing phase of Carroll's trial, we find no evidence that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. We conclude that the findings and conclusions of the trial court are supported by the evidence. We have independently weighed the aggravating circumstance against the statutory and nonstatutory mitigating circumstances, and we concur in the trial court's judgment that death is the appropriate sentence in this case. Considering the crime committed by Carroll, we find that the sentence of death is neither excessive *821 nor disproportionate to the penalty imposed in similar cases.
Carroll's sentence of death is affirmed.
AFFIRMED AS TO SENTENCE.
McMILLAN, COBB, BASCHAB, and FRY, JJ., concur.
NOTES
[1] Mack Dailey was convicted of murder made capital because it was committed during the course of a robbery and of robbery in the first degree. He was sentenced to life imprisonment without parole on the capital-murder count and to 20 years' imprisonment on the robbery count. His convictions were affirmed by this court in an unpublished memorandum. See Dailey v. State, 741 So.2d 482 (Ala.Cr.App.1998)(table).
[2] Section 13A-1-2(11), Ala.Code 1975, provides that a firearm is a deadly weapon.